[Sac. No. 919. Department One.—April 28, 1902.]

In the Matter of the Estate of THOMAS M. BLAKE, Deceased. MARGARET TANTAU et al., Appellants, v. CHRISTENE BLAKE et al., Respondents.

CONTEST OF WILL—MENTAL CONDITION OF DECEASED—TESTIMONY OF MEDICAL EXPERTS—INSTRUCTION—PROVINCE OF JURY.—Upon the contest of the probate of a will, where the mental condition of the deceased was at issue, the testimony of qualified medical experts, under hypothetical questions properly framed, upon the subject of his unsoundness of mind, was competent evidence, and it was the sole province of the jury to determine the credibility of the experts, and the weight to be given to their testimony; and an instruction by the court discrediting the testimony of medical witnesses given upon hypothetical questions, as experts, as unsatisfactory and unreliable, and giving the reasons why, in the judge's opinion, it was such, invaded the province of the jury, and improperly charged them as to matters of fact.

ID.—EXECUTION OF WILL—SIGNATURE OF TESTATOR.—A will written upon a blank form, in which a blank space was left after the end of the testamentary provisions, wherein there was no writing or printing, and upon the following page of which under the heading "Lastly," a provision was made for the appointment of an executrix, followed by the clause, "In witness whereof," etc., at the end of which the testator's name appears, followed by no other clause, is properly subscribed "at the end thereof," within the meaning of the statute.

APPEAL from an order of the Superior Court of Tulare County admitting a will to probate. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Alfred Daggett, J. J. Dunne, and R. F. Roth, for Appellants.

Bradley & Farnsworth, and E. O. Larkins, for Respondents.

THE COURT.—This is an appeal from an order admitting a will to probate. The will was contested, by certain daughters of deceased, upon the grounds that it was not executed or subscribed by the attesting witnesses according to law; that deceased was not of sound mind at the time of its

execution; and that it was procured by fraud and undue influence. A jury was impaneled, and the various issues submitted to it, upon which a special verdict was returned upon each issue in favor of the proponents of the will.

Upon the issue as to the mental condition of deceased, the contestants examined certain physicians as experts, and asked the said experts certain hypothetical questions, based upon supposed conditions and certain facts claimed to be shown by the evidence. No objection was made as to the qualifications of the said physicians as experts, nor as to the form of the hypothetical questions. These physicians all stated that in their opinion a person such as described in the hypothetical questions was of unsound mind. The code provides that evidence may be given of the fact as to the opinion of a person on a question of science when he is skilled therein. (Code Civ. Proc., sec. 1870, subd. 9.)

The court below at the request of contestants in the instruction numbered twenty-six correctly stated the law to the jury as follows:—

"The law recognizes and receives the testimony of duly qualified medical expert witnesses. Such an expert must, of course, be qualified according to law. A mere opportunity afforded for observation will not constitute a person an expert. He must have been educated in the business about which he testifies, or it must be first shown that he has acquired actual skill and scientific knowledge concerning the subject-matter involved. When such experts are, however, duly qualified, the law recognizes and receives their testimony, and in arriving at a conclusion concerning the issues involved in this cause, you may take into consideration their testimony and award to it such value as in your judgment it deserves."

But the court, at the request of proponents, charged the jury as follows:—

"Medical witnesses have been examined in this contest, and, so far as their testimony is dependent upon hypothetical questions, the court instructs you that the testimony of experts is frequently unsatisfactory, and many times unreliable; it is unsatisfactory, because it cannot convey to our minds the precise reasons why the conclusions are reached; and it is unreliable, because it is frequently based upon speculations instead of facts. Experts in the exact sciences and in

mechanics, who base their opinions upon the laws of nature and of the exact sciences, and their own experiences with those laws, have tangible facts before them; but where the opinions are based upon speculation, where the subject of the inquiry—namely, the operation and condition of the human mind—is beyond the possibility of human knowledge, we should receive those opinions as at least uncertain. So when we see a person perform such or such an act, we can form an opinion whether the act is rational or irrational, whether it is consistent with the standard of average human intelligence and reasonableness; but when we advance to speculations upon what would or would not follow upon some supposed existence of mental conditions, we go beyond the scope of knowledge and tread upon the realm of imagination or conjecture.

"You are instructed, therefore, that while we receive and you will take into consideration the opinion of experts, such opinions are not entitled to as much weight as facts, especially where there is a conflict between an opinion and a fact; when a fact is established, it is a fact, and cannot be overcome; while an opinion is but an opinion, and it may be true and it may be untrue. Opinions of different experts are often diametrically opposed to each other, even when based upon the same supposed conditions."

It is contended that the latter instruction is erroneous, as matter of law, and also contradictory of the instruction given on the same question at contestants' request, and we think the contention correct.

The testimony of the experts was competent, and went to the very gist of the claim made by contestants. By the instruction the court so discredited it as to practically destroy it. The jury could not but see that the judge had a very poor opinion of testimony of this character. The jury were told that it was unsatisfactory and the reason why it was so. They were further told that it was unreliable and the reason why it was so. Not only this, but, to make assurance doubly sure, they were told that opinions of experts are not entitled to as much weight as facts, and that such opinions based upon the same supposed conditions are often diametrically opposed to each other. While the opinion of the judge

may have reasons to support it, it was not proper for him to give his opinion to the jury. Neither was it proper for him to give the jury, in the instruction, an argument as to the reasons why such evidence in his opinion was unreliable and unsatisfactory. The judge may have been of the opinion that the common-law rule, by which the parties in interest were not competent witnesses, is the better rule. Suppose such to have been his opinion, and he had told the jury that the parties had testified, and then told them further that the testimony of parties is unreliable and unsatisfactory because experience has proven that in many cases parties will not tell the truth against their interests. Would any one doubt that such an instruction would be error? The judge, if allowed to express his opinion as to one class of evidence, would be allowed to do so as to others, and we would have some evidence discredited in every case, depending upon the particular views and prejudices of the judge presiding. In the opinion of one judge the testimony of a relative, of another the testimony of a colored man, might be singled out and discredited, and so on as to all classes of evidence and of witnesses. The code makes the testimony of the physicians admissible. "Evidence may be given of the following facts: . . . The opinion of a witness," etc. The jury may determine whether or not the opinion is reliable. The opposite party is given full opportunity to cross-examine and show the reasons upon which the opinion is based. He is further given full opportunity to argue before the jury the credibility of such evidence, and of all evidence, and the jury will thus probably arrive at the truth. The judge, under our system, is not allowed to charge juries as to the facts, but may state the testimony and declare the law. There is no law that declares that the testimony of experts is unsatisfactory and unreliable. If so, the law should not allow it to be given in evidence. It is said by Lawson in his work on Expert and Opinion Evidence (2d ed., p. 181): "The credibility of the experts, the weight to be given to their testimony, is as much the province of the jury to determine as any other class of witnesses; and hence the court, in most of the states, is not permitted to advise the jury in the matter at all, or to assume to instruct as to whether expert or non-expert evidence has greater weight."

It was said by the supreme court of Indiana, in *Goodwin* v.

*State,* 96 Ind. 563, in speaking of witnesses and expert testimony: "As both kinds of evidence are competent, the jury are charged with the duty of determining the weight and effect of the evidence in each particular case, and the court has no right to charge them to give preferences to the one class over the other."

In *Langford* v. *Jones,* 18 Or. 307, the lower court had charged the jury that the evidence of medical experts "is to be received with caution," and in an opinion written by the chief justice the court said: "I think that character of evidence stands upon the same footing as any other. The code (sec. 706, and subd. 9 thereof) provides, in effect, that the opinion of a witness on a question of science, art, or trade, when he is skilled therein, may be given in evidence on the trial, and it makes no distinction between that character of evidence and any other. I do not see, therefore, by what authority the circuit court, if it had so intended, could hold that such evidence should be received with caution."

In *Pannell* v. *Commonwealth,* 86 Pa. St. 260, the lower court had told the jury that in the case he questioned very much whether they would realize much if any valuable aid from the testimony of the experts. The court in its opinion said: "Yet when the court came to apply the testimony to the case trying, its effect was almost destroyed. We see no especial circumstances in this case to justify the taking from the evidence of these medical witnesses that consideration to which the testimony of experts is generally entitled."

So the supreme court of Mississippi, in *Louisville etc. R. R. Co.* v. *Whitehead,* 71 Miss. 451,[1] in commenting upon a similar instruction, said: "The singling out of the witnesses supposed to have been expert witnesses (whether they were or not, it is unnecessary for us to determine) for discrediting remarks by the court, and the unfavorably contrasting their evidence with the other evidence in the case, was in disregard of section 732 of the code of 1892."

It is needless to multiply quotations, but the following cases are cited, as supporting the rule here adopted: *Wannack* v. *Mayor etc.,* 53 Ga. 162; *State* v. *Hundley,* 46 Mo. 414; *Louisville etc. R. R. Co.* v. *Malone,* 109 Ala. 509; *City of Kan-*

---

[1] 42 Am. St. Rep. 472.

*sas* v. *Hill,* 80 Mo. 523; *Beever* v. *Spangler,* 93 Iowa, 576; *Ryder* v. *State,* 100 Ga. 528.[1]

In this state it has been held error for the judge below to express an opinion that a witness is a person of respectability (*McMinn* v. *Whelan,* 27 Cal. 319); to state to the jury that verbal admissions of a party should be received with great caution (*Kauffman* v. *Maier,* 94 Cal. 282); to tell the jury that a certain fact was a strong circumstance (*People* v. *Ah Sing,* 59 Cal. 401); to tell the jury that a witness had contradicted herself several times (*People* v. *Willard,* 92 Cal. 489); to state to the jury that they may consider the probabilities of a certain class of witnesses telling the truth (*People* v. *Christensen,* 85 Cal. 568); to single out a witness or class of witnesses with remarks as to their credibility (*Thomas* v. *Gates,* 126 Cal. 1); and to state to the jury that circumstantial evidence is not entitled to a less degree of credit than direct evidence (*People* v. *Vereneseneckockockhoff,* 129 Cal. 499; *People* v. *O'Brien,* 130 Cal. 3). We are cited by respondent to *Grigsby* v. *Clear Lake Water Co.,* 40 Cal. 396, and *People* v. *Barthleman,* 120 Cal. 7, as supporting contrary views to what has been herein said.

In *Grigsby* v. *Clear Lake Water Company* the remarks of the learned judge were made in holding that the testimony of one Brown, an expert, ought to have been admitted. What is said as to the evidence of experts being received with caution is correct, but the judge did not say that the court could discredit the evidence after it had been received by remarks to the jury. In *People* v. *Barthleman,* 120 Cal. 7, the court below had instructed the jury that evidence of certain physicians should be viewed with scrutiny and received with great caution. The court did not approve of the instruction, but said that it told the jury to do what they should have done without any instruction, and that the giving of the instruction "was not, at least, prejudicial error." The proposition that the instruction was erroneous does not seem to have been very strongly contended for, because the opinion commences the discussion of it by saying "there is some contention that the court erred in giving," etc.

The case is clearly distinguishable from this. The jury were not told that the evidence was "unreliable," nor that it

---

[1] 62 Am. St. Rep. 334.

was "unsatisfactory," nor that "it was not entitled to as much weight as facts."

As the case must be sent back for a new trial, it is proper to dispose of the contention of appellant that the will was not subscribed at the end thereof. This contention is based upon the fact that the will was written on a blank form, and after the end of the testamentary provisions is a blank space with lines of more than half a page on which there is no writing or printing. On the following page, under the heading "Lastly," the provision as to the appointment of the executrix is made; then follow the clause, "In witness whereof," etc., and the name "Thomas M. Blake." We think the will was signed "at the end thereof" within the meaning of the statute. There is no provision as to the disposition of property, or provision of any other kind, after the name of the testator. The name was signed at the end, but not immediately at the end of the testamentary provisions. It was not necessary for the signature to have been on the first or second line below the testamentary clauses. The many cases cited by appellant are not in point. In all of them the signature was followed by some clause containing what was intended as a part of the will.

It is not necessary to notice the many criticisms of appellant as to the admissibility of evidence and the rulings thereon, except to say that many of them are exceedingly hypercritical and without merit. In case any of them are of sufficient merit to verge upon the border of error, it is to be presumed they will not again occur.

The order is reversed and the cause remanded.

Hearing in Bank denied.