[Civ. No. 16398. Fourth Dist., Div. One. Oct. 27, 1978.]

J. B. MEYSER et al., Plaintiffs and Appellants, v.
AMERICAN BUILDING MAINTENANCE, INC., et al.,
Defendants and Respondents.

MORRIS LACKEY, Plaintiff and Appellant, v.
AMERICAN BUILDING MAINTENANCE, INC., et al.,
Defendants and Respondents.

934

**COUNSEL**

Gerald R. Kroll, Richard A. Corsini and George A. Alspaugh for Plaintiffs and Appellants.

McInnis, Fitzgerald, Rees & Sharkey and Peter L. Dean for Defendants and Respondents.

**OPINION**

**WELSH, J.***—Plaintiffs J. B. and Alice Meyser are the lessor-owners of a commercial store-front building in the City of Carlsbad. Plaintiff Morris Lackey is a tenant who operated a laundromat on the premises. ▇▇ ▇▇ The Meysers and Lackey brought separate suits against American Building Maintenance, Inc. (ABMI) to recover for fire damage to the structure and equipment. The cases were consolidated for trial and the trial was bifurcated pursuant to Code of Civil Procedure section 598. Following plaintiffs' verdict on the liability issue and before trial of the damage phase, the trial court granted ABMI's motion for judgment notwithstanding the verdict (Code Civ. Proc., § 629).[1] Plaintiffs argue the trial court lacked jurisdiction to grant such a motion at this stage of the proceedings and, in any event, the motion should not have been granted. We agree with both contentions.

Following the Liability Phase of a Bifurcated
Trial the Court May Not Enter Judgment for Defendant
Notwithstanding a Verdict for Plaintiff.

The resolution of this issue depends upon the interpretation of sections 598, 629, 659 and 659a. Section 598 provides, in a bifurcated trial, if the

---

*Assigned by the Chairperson of the Judicial Council.
[1]All code sections refer to the Code of Civil Procedure.

decision of the court or the verdict of the jury is *for defendant* on liability, judgment thereon shall be entered and no further proceeding shall be had unless the judgment is reversed on appeal "or otherwise set aside or vacated." It follows the court has power to grant a judgment for plaintiff notwithstanding a verdict for defendant at this juncture. When no liability is found, the case has been fully tried and the reference to setting aside or vacating a defense verdict implies such motions are contemplated.

But where the jury returns a plaintiff's verdict, there is no provision, directly or by implication, for setting aside or vacating the verdict. Section 598 provides if the decision of the court or verdict of the jury is *against defendant*, on the liability issue, "the trial of the other issues or parts thereof shall thereafter be had *at such time*, and if a jury trial, before the same or another jury, *as ordered by the court* . . . ." (Italics added.) The directive to proceed with the balance of the trial "at such time," suggests it shall be done without delay. As we shall see, the procedure for presenting motions for judgment notwithstanding verdicts will cause delays which would generally require discharging the jury. Thus, the discretion reposed in the court to proceed with the trial "before the same or another jury" could be thwarted by defendants who choose to make such motions.[2]

Counsel for ABMI urge us to construe section 598 to permit these motions to be made after a plaintiff's verdict on liability. They point out that the purpose for dividing a trial in two parts "is avoidance of the waste of time and money caused by the unnecessary trial of damage questions in cases where the liability issue is resolved against plaintiff" (*Trickey* v. *Superior Court*, 252 Cal.App.2d 650, 653 [60 Cal.Rptr. 761]). It is anomolous, they argue, to require a case with no merit to proceed all the way through the damages stage before the trial court can enter a judgment notwithstanding the verdict. Since motions for nonsuit and directed verdict may be granted during the liability phase and this motion is the same motion made at a later time,[3] it makes no sense, they say, not to permit it.

---

[2] See *Horton* v. *Jones*, 26 Cal.App.3d 952, 958 [103 Cal.Rptr. 399], where the court points out that an appeal from the *denial* of a motion for judgment notwithstanding the verdict after the liability trial would have the effect of striking the words " 'before the same . . . jury' " from section 598.

[3] A motion for judgment notwithstanding the verdict shall be made "[w]henever a motion for a directed verdict . . . should have been granted. . . ." § 629; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 374, p. 3168). All three motions are granted on the same

The anomoly, if such it is, can only be removed by legislation. Section 629 provides: "A motion for judgment notwithstanding the verdict shall be made within the period specified by Section 659 . . . in respect of the filing and serving of notice of intention to move for a new trial." And a motion for a new trial cannot be made until *all* the issues in a bifurcated case have been determined (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 460 [20 Cal.Rptr. 321, 369 P.2d 937]; *Mays* v. *Disneyland, Inc.,* 213 Cal.App.2d 297 [28 Cal.Rptr. 689]).[4] Therefore, a motion for judgment notwithstanding the verdict cannot be made until the jury has returned verdicts on both liability and damages.[5]

Under present legislation, the court cannot rule on a motion for judgment notwithstanding the verdict until the time to file a new trial motion has expired. This is *after* entry of judgment. Thus if defendant moved only for judgment notwithstanding the verdict following phase one of the trial, the court could not rule on the motion until after phase two had been completed when judgment is entered. If both motions are filed, the court shall rule on both at the same time, but this cannot occur until all parties have had an opportunity to file countermotions and affidavits in support of the motion for new trial. This consumes 20 to 60 days after the motion has been filed (see §§ 629, 659 and 659a).

ABMI argues we should not apply the rule of *Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d 450, to the bifurcated trial statute (§ 598). *Auto Equity,* decided before the passage of section 598, was a case where the issues were separated for trial pursuant to stipulation between counsel. In the absence of legislative directive there is no basis for this distinction. *Auto Equity* is equally applicable to statutory bifurcations as it is to stipulated bifurcations.[6]

---

grounds. (*Baldwin Contracting Co.* v. *Winston Steel Works, Inc.,* 236 Cal.App.2d 565 [46 Cal.Rptr. 421].)

[4] See also California Rules of Court, rule 232.5, ". . . . Any motion for a new trial following a bifurcated [judge] trial shall be made after all the issues are tried and, if the issues were tried by different judges, each judge shall hear and determine the motion as to the issues tried by him."

[5] See dictum in *Horton* v. *Jones, supra,* 26 Cal.App.3d 952, 955, "Thus, under Code of Civil Procedure, section 629, a motion for judgment notwithstanding the verdict cannot even properly be *made,* until all the issues have been disposed of."

[6] For practical reasons, it is preferable to withhold decision on the sufficiency of plaintiffs' evidence until after a verdict is returned. But the loss of this procedural device in bifurcated trials will work no severe hardship. The directed verdict is still available.

### The Credibility of Plaintiff's Expert
### Witness Was for the Jury to Resolve.

■■■ To forestall another appeal, it is appropriate that we review the facts to determine if the judgment notwithstanding the verdict should be granted.

Plaintiffs had engaged the services of ABMI to open and close the laundromat. The doors were to be locked at 11 p.m. and opened at 6 a.m. On February 8, 1974, ABMI, without plaintiffs' consent, opened the store between 3 and 3:30 a.m. At approximately 3:55 a.m. a Carlsbad police officer observed a column of smoke coming from the laundromat. It was on fire. The fire department responded, suppressed the fire and Chief Fire Marshal Alex Wolenchuk inspected the premises to determine the cause of the fire. After he examined the rubble for 30 to 40 minutes, Wolenchuk was called away to inspect another fire at a church one and one-half miles away. He then returned to the laundromat to continue his investigation.

On direct examination Chief Wolenchuk testified he had been a fireman for 20 years. He had taken courses in arson investigation and had investigated "a hundred or less" fires for arson. He concluded the fire had started in the interior of a small room the door to which showed signs of pry marks. He had observed similar "jimmy marks" on the outside door of the church. The similarities found in two fires, near in time and distance, made it *possible* there had been burglary with arson to cover it in both cases. He ruled out accidental and electrical fire because there was no natural gas, flammable liquids or electrical equipment in the vicinity and there was no evidence of a slow smoldering fire that could have been started before closing time that evening. Based on *reasonable probability,* he offered the opinion the fire was a set fire. "By that I mean it was caused by an arsonist."

The credibility of Wolenchuk's opinion was seriously undermined on cross-examination. He had not made out a report indicating his opinion concerning arson. It was his opinion it was *possible* arson. He did not know if the pry marks on the door had been caused by the firemen; the coin operated machines had not been tampered with. Excerpts from the cross-examination follow:

"Q. As far as what you saw on the scene, Chief, did you see any other single thing at the 20 Penny Wash [the laundromat] that indicated to you that the fire was started by arsonists other than the mark on the door?

"A. No."

At his deposition Wolenchuk said he did not recall whether he had found residue of electrical appliances. After reading this part of his deposition, counsel asked:

"Q. So, it's your opinion it could be electrical or arson, correct?

"A. Yes.

"Q. So then, Chief, you did not find a probable cause of this fire, correct?

"A. Yes.

"Q. You wouldn't consider that fact alone [fires going on at two places at once in close proximity] as indicating arson would you?

"A. With the type of burn and location of burn, I would probably assume that it would be, or may be.

". . . . . . . . . . . . . . . . . . . . . .

"Q. Chief, if you found out that marks on the door at the 20 Penny Wash were made by a fireman, would that change your opinion as to the possible cause of this fire?

"A. I don't believe so.

"Q. You'd still conclude it was done possibly by an arsonist; correct?

"A. Yes." Counsel for the defendant then read from the deposition where the Chief stated that he concluded the fire was caused either by arson or electrical defect. In answer to which of those two was the most *probable* he stated: "I would have to say arson."

At the conclusion of plaintiffs' case in chief, defendant ABMI moved for nonsuit which was denied. The defense then rested without putting on evidence and the liability issue was submitted to the jury. After deliberating for 37 minutes, the jury returned a unanimous verdict for plaintiffs. ABMI moved for new trial and judgment notwithstanding the verdict. The new trial motion was denied, the judgment notwithstanding the verdict was granted.

■ It is well established that a directed verdict or judgment notwithstanding the verdict cannot be granted if, giving to plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate

inference which may be drawn from that evidence, substantial proof supports the verdict (*Dailey* v. *Los Angeles Unified Sch. Dist.,* 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360]; *Estate of Lances,* 216 Cal. 397 [14 P.2d 768]). Though the trial court may weigh the evidence and judge the credibility of witnesses on a motion for new trial, it may not do so on a motion for directed verdict (*ibid.*).

Applying this test, we find Chief Wolenchuk testified on both direct and cross-examination that the fire broke out in an interior room and it was probably caused by arson. It is true his testimony was "internally inconsistent," as the able trial judge observed, but, as the judge remarked when denying the motion for nonsuit, "At any rate, I think what really we're talking about is not admissibility but weight to be assigned to this witness' testimony. And I am going to leave that to the jury. So the motion is denied."

In *People* v. *Loop,* 127 Cal.App.2d 786, 800 [274 P.2d 885], the court stated: "The jury are the exclusive judges of the credibility of witnesses . . . the rule applies to expert witnesses. . . . The rule as to conflict of evidence applies to cases of inconsistencies and contradictions in the testimony of a witness. The conflict is all the more for the jury for being intestine." ▮ ABMI's argument is similar to appellant's contention in *Weintraub* v. *Soronow,* 115 Cal.App. 145, 149-150 [1 P.2d 28], and our answer is the same as that given there: "Appellant urges that the testimony of respondent is so full of 'glaring inconsistencies' and 'irreconcilable contradictions' that no reliance can be placed upon it, and that under such circumstances it justifies the conclusion that it is insufficient to uphold the verdict, in which case a question of law arises which may be reviewed by the appellate court . . . . We do not find such inherent weakness in the testimony of respondent that a question of law arises, and the so-called irreconcilable and inconsistent testimony is capable to a large degree of reconciliation. But even if it were not, our understanding is that in such a case 'if the evidence is such as that different conclusions upon the matter can rationally be drawn therefrom, then the case presented is one for the jury' [citation]. In other words, it still presents a conflict in the evidence even though found in the testimony of a single witness . . . ." (See also *Estate of Blake,* 136 Cal. 306, 309 [68 P. 827]; *Dowd* v. *Joyce,* 85 Cal.App. 377, 380 [259 P. 368], cited in *People* v. *Loop, supra,* 127 Cal.App.2d 786.)

Under circumstances such as those presented here, where defendant was hired for security purposes, foreseeability of arson or other invasive

criminal acts is apparent (*Wallace* v. *Der-Ohanian,* 199 Cal.App.2d 141, 146 [18 Cal.Rptr. 892]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 643, pp. 2922-2923; Rest. 2d Torts, § 449 and com. b).

This case is typical of too many that reach this court where counsel have made inadequate presentations to the trial court but do their "homework" after an appeal has been filed. Counsel for plaintiffs gave the trial judge no points and authorities on this issue, i.e., whether the evidence supported the jury verdict. If more attention were given to such matters below, fewer cases would reach this court.

The judgment is reversed with directions to conduct further proceedings on the issue of damages.

Cologne, Acting P. J., and Wiener, J., concurred.