Filed 7/22/14

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| JOAQUIN OCHOA et al., | B240595 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. VC056716) |
| v. | |
| JESUS FELIPE DORADO et al., | |
| Defendants and Appellants. | |


APPEALS from an order of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Appeals dismissed in part, and order reversed in part with directions.

Mgdesyan Law Firm, George G. Mgdesyan; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiffs and Appellants.

Brown, Brown & Klass, Delos E. Brown, Robert L. Kaufman and John J. Stumreiter for Defendants and Appellants.

Joaquin Ochoa was driving and Imelda Moreno was a passenger in a big-rig tractor without a trailer when the vehicle was struck from behind by a tractor-trailer being driven by Jesus Felipe Dorado, a driver for Trimac Transportation Services Western, Inc. (Trimac). Dorado and Trimac conceded liability, and a jury awarded damages to both plaintiffs. The trial court ordered a partial new trial on certain economic damages and struck the awards of noneconomic damages. Plaintiffs appeal those rulings. Defendants also appeal, challenging the denial of their motion for judgment notwithstanding the verdict (JNOV) and the denial of their motion in limine.

Defendants' new trial and JNOV motions were premature because they were filed before the case was fully decided. Both the motions and the order ruling on the motions are void and of no effect. We therefore will reverse the order as to those rulings. In addition the order striking the awards of noneconomic damages is nonappealable, and Defendants' appeal from the judgment is of no effect and must be dismissed because there is no judgment.

We also will address certain legal questions that are likely to arise on remand concerning damages for past medical expenses. We conclude that (1) unpaid medical bills are not evidence of the reasonable value of the services provided and (2) no expert witness declaration is required for a treating physician offering an opinion based on facts acquired in the physician-patient relationship or otherwise acquired independently of the litigation, including, to the extent it is otherwise admissible, an opinion on reasonable value.

2

## FACTUAL AND PROCEDURAL BACKGROUND

1.  *Factual Background*

Plaintiffs were stopped in traffic on the I-710 freeway on July 10, 2008, when Dorado rear-ended them. They were not hauling a tractor at the time, but were taking the truck in for service and driving to the office to drop off some papers. Dorado did not notice that the traffic in front of him had stopped until it was too late for him to stop safely. He applied the brakes, but the force of the collision pushed Plaintiffs' truck forward about 18 feet, striking tractor in front. Plaintiffs were taken to a hospital emergency room.

Plaintiffs were living together at the time of the collision and are now married.[1] Moreno owned the truck in which they were riding and hired Ochoa as a driver. Moreno provided trucking services as an independent contractor under a contract with Xtra Mile Transport, Inc.

Plaintiffs were treated for back pain after the collision, first by a chiropractor and later an orthopedic surgeon, Dr. Michael Schiffman. Ochoa continued to drive professionally, but with pain. He passed a federal trucker's medical exam in August 2010. He underwent back surgery in February 2011. The surgery alleviated but did not eliminate the pain. Ochoa has not worked since the surgery.

---

[1]  Moreno testified at trial that her name was Imelda Moreno. For the sake of clarity, we will refer to her as Moreno, although the parties and the trial court sometimes referred to her as Mrs. Ochoa. In this effort to avoid confusion, we mean no disrespect to either plaintiff.

Moreno suffered incapacitating back pain after the collision and experienced no significant improvement after two years of treatment. She underwent back surgery in early 2011.

2. *Pretrial Proceedings*

Plaintiffs filed a complaint in July 2010 alleging counts against Defendants for negligence and loss of consortium. Plaintiffs named numerous treating physicians as expert witnesses in their expert witness designation. They designated Joyce Pickersgill as a retained expert (Code Civ. Proc., § 2034.210, subd. (b))[2] on the subject of economic damages, but they designated no retained expert to testify specifically on the reasonableness of their medical expenses.

Defendants filed a motion in limine No. 1 to exclude testimony by Plaintiffs' nonretained treating physicians on any expert opinions that were not formed at the time of and for purposes of treatment, but instead were formed for purposes of litigation. Defendants argued that Plaintiffs had listed 25 individual, nonretained treating physicians or other health care providers in their expert witness designation and stated in the designation that each would testify on "plaintiff's condition, diagnosis, prognosis and related issues." Defendants argued that this description "does not include opinions on the reasonable value of medical services or the non-medical causation issues relating to the injuries," and that the treating physicians for whom no expert witness declaration was provided should be precluded from testifying on such matters.

---

[2]    All statutory references are to the Code of Civil Procedure unless stated otherwise.

4

Defendants also filed a motion in limine No. 5 to exclude any evidence of the reasonable amount of Plaintiffs' medical expenses, arguing that Plaintiffs' failure to produce such evidence in response to discovery and failure to designate an expert witness to testify on the reasonableness of their medical expenses precluded the presentation of such evidence at trial. Defendants cited *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.th 541 (*Howell*) for the proposition that a plaintiff can recover no more than the reasonable value of the medical services provided.[3]

The trial court granted Defendants' motions in limine Nos. 1 and 5 in part, ruling that Plaintiffs' treating physicians not designated as retained experts could testify only on their medical services provided, their medical diagnoses, and the fees charged for their services. The court ruled that Plaintiffs' nonretained treating physicians could not testify on other matters such as whether their fees represented the reasonable value of the services provided. The court later modified its ruling by deciding that Dr. Schiffman could also testify on his expert opinion as to legal causation. The court found that Dr. Schiffman had acted as a treating physician at all times and did not act as an expert retained for purposes of litigation. The court also reaffirmed its ruling that Dr. Schiffman could not testify on the reasonable value of the services provided "because that's above and beyond his responsibilities as a treating physician."

---

[3]  The trial court and counsel sometimes referred to Defendants' motion in limine No. 5 as "the *Howell* motion."

5

Defendants filed a motion in limine No. 6 to exclude any testimony by Pickersgill. They argued that Plaintiffs had designated Pickersgill as an expert who would testify on economic damages, but they had unreasonably failed to make her available for deposition (§ 2034.300, subd. (d)). The trial court ordered that she be made available for deposition and denied the motion.

Defendants filed a motion in limine No. 9 to exclude any evidence of or claim for noneconomic damages, arguing that Civil Code section 3333.4 precluded any recovery of noneconomic damages because Plaintiffs were uninsured at the time of the collision. Defendants presented evidence that the liability insurance policy that Plaintiffs had identified in discovery as applicable was canceled before the collision. Plaintiffs opposed the motion and presented evidence of a commercial lines insurance policy issued by Williamsburg National Insurance Company (Williamsburg) identifying Andres Marroquin, dba Xtra Mile Transport, as the named insured. The policy period included the date of the collision, and the policy identified by vehicle identification number the truck that Ochoa was driving at the time and listed Ochoa as a driver. The trial court deferred ruling on the motion.

3.    *Trial and Verdict*

A jury trial commenced in November 2011. Defendants objected at trial to questioning of Dr. Schiffman on the reasonableness of the amounts billed for medical treatment that he provided. The trial court sustained the objection, "based on the motion in limine." Defendants then stipulated to the amounts billed for Plaintiffs' past medical treatment. Plaintiffs presented no testimony at trial on the reasonableness of their past

6

medical expenses.  The court admitted evidence of the amounts of Plaintiffs' medical bills at the conclusion of trial.

Plaintiffs presented expert testimony by Gene Bruno, a rehabilitation consultant, on the current cost of future medical care and other matters.  Bruno testified on the cost of recommended future medical visits, stating, for example, with respect to an orthopedist, "One visit a month at $150 a visit."  He testified that medication would cost from $4,564 to $4,785 per year, and also itemized other future medical costs.

Pickersgill projected future increases in the costs stated by Bruno, estimated Plaintiffs' life expectancies, and calculated the present value of the stated future medical expenses.  She also testified on Plaintiffs' lost future earning capacities.

The jury returned a special verdict on December 6, 2011, finding that Defendants' negligence was a substantial factor in causing Plaintiffs harm.  It found that Ochoa had suffered $345,539 in damages for past medical expenses and $26,000 in past noneconomic damages, and that he would suffer $200,000 in damages for lost future earning capacity, $125,000 in damages for future medical expenses, and $26,000 in future noneconomic damages.  The jury found that Moreno had suffered $465,536 in damages for past medical expenses and $35,000 in past noneconomic damages, and that she would suffer $200,000 in damages for lost future earning capacity, $145,000 in damages for future medical expenses, $40,800 in damages for future household services, and $36,000 in future noneconomic damages.

The trial court noted that it had deferred ruling on Defendants' motion in limine No. 9 to exclude any evidence of or claim for noneconomic damages.  The court also

7

stated that it had deferred ruling on "the *Howell* motion." The court nonetheless ordered Plaintiffs to prepare a proposed judgment, but Plaintiffs failed to do so, and no judgment was entered.

4. *Posttrial Motions*

Defendants filed a motion for JNOV on December 19, 2011, arguing that there was no evidence to support any item of damages awarded by the jury. They argued with respect to past medical expenses that Plaintiffs' medical bills were not evidence of the reasonable value of the services provided, and that Plaintiffs had failed to prove the reasonable value of past medical services and therefore were entitled to no damages for past medical expenses. In addition, defendants argued that Plaintiffs had failed to prove the reasonable value of future medical services and therefore were entitled to no damages for future medical expenses.

Defendants further filed a notice of intention to move for a new trial on December 19, 2011, on grounds of insufficiency of the evidence to support the verdict, excessive damages, error in law, and other grounds. In their memorandum supporting the motion, they challenged only the damages for lost future earning capacity and future household expenses, and stated that other items of damages were addressed in other motions and were not addressed in the new trial motion.

Defendants also moved to strike the awards of noneconomic damages based on Civil Code section 3333.4, essentially renewing their motion in limine No. 9. The trial court allowed Plaintiffs to present testimony by an insurance agent, Oscar Cortez, who was employed by the insurance broker for Marroquin, dba Xtra Mile Transport. Cortez

8

testified in February 2012 that the truck that Ochoa was driving on the date of the collision was listed on the policy and was insured at that time and that Ochoa was listed on the policy as a driver. The court did not find that Cortez was qualified to testify as an expert, and Cortez declined to opine as to whether the policy provided coverage in these circumstances.

The trial court initially heard the posttrial motions on January 20, 2012. On that date, the court continued the hearing to February 10, 2012, for additional argument and testimony by Cortez.[4] On February 10, 2012, the court continued the hearing to February 23, 2012. The court conducted a hearing on February 23, 2012, and took the matters under submission.

The trial court filed an order ruling on the posttrial motions on March 8, 2012. It denied the motion for JNOV, stating that Plaintiffs had suffered damages and the only question was the proper calculation of damages, which would be addressed in the new trial motion.

The order initially stated that the new trial motion was granted as to "1. The medical damages. [¶] 2. Lost earnings of Mr. Ochoa [¶] 3. Household expenses awarded to Mrs. Ochoa." After explaining the reasons for granting the motion, the

---

[4] The trial court stated at the hearing on January 20, 2012, that its tentative ruling on "the *Howell* issue" was to order a new trial on the reasonable value of the medical services provided. The court also stated at the hearing that the 60-day period to rule on the new trial motion had not yet started to run because no judgment had been entered and no notice of entry of judgment had been served. Defendants' counsel agreed.

9

order concluded, "On the above grounds, a new trial is granted as to medical damages, lost earnings damages and household expenses damages."

The order explained that there was "no evidence [of the] 'reasonable value' of the medical services provided," and that the medical bills were not evidence of the reasonableness of the amounts charged. It stated that Plaintiffs clearly had incurred medical expenses and that the only question was the reasonable value of the services provided. The trial court concluded, "Thus a new trial on the reasonable value of the services provided is in order."[5]

The order also explained that the earnings of the average worker were an "improper basis" for an award of damages for "future lost earnings" and that such damages must be based on the plaintiff's own "work history," citing *Shaw v. Southern Pacific R. R. Co.* (1910) 157 Cal. 240. It also stated that the federal trucker's medical exam "established that [Ochoa] had no orthopedic, neurological or psychological history that would impair his truck driving ability," so his damages were "excessive as a matter of law." The order stated further that Moreno had suffered no "economic damages as a dispatcher" because this same evidence showed that she could send Ochoa out on jobs.[6]

---

[5] Although the order referred to "[t]he medical expenses" generally and did not expressly distinguish past medical expenses from future medical expenses, the references to medical bills and "services provided" suggest that the order was limited to past medical expenses.

[6] Plaintiffs did not seek and the jury did not award any damages for lost future earnings. The words "future lost earnings" and "lost earnings" in the order apparently referred to the damages awarded for lost future earning capacity.

10

The order stated as to future household expenses that there was no testimony as to how much household work Moreno performed before her injury and no testimony that she was unable to perform household work in the future, so there was no factual basis for the expert opinion on damages for future household expenses.

The trial court also granted Defendants' motion to strike the awards of noneconomic damages on two independent bases. First, the court concluded that the Williamsburg policy provided coverage for Plaintiffs only if they had their own liability insurance, and they had none, so they were uninsured and therefore were precluded from recovering noneconomic damages pursuant to Civil Code section 3333.4. Second, the court stated that apart from that policy condition, the Williamsburg policy provided coverage for Plaintiffs only while they were working for Xtra Mile Transport, and they were not working for Xtra Mile Transport at the time of the collision.

5. *Appeals*

Plaintiffs timely appealed the order granting a new trial and also appealed the order striking their awards of noneconomic damages. Defendants timely appealed the denial of their motion for JNOV and also appealed "the judgment."

### *CONTENTIONS*

Plaintiffs challenge the order granting a partial new trial on damages for past medical expenses and Ochoa's lost future earning capacity and striking the awards of noneconomic damages.[7] They contend (1) their unpaid medical bills are evidence of the

---

[7]     Plaintiffs expressly do not challenge the order granting a new trial on damages for Moreno's lost future earning capacity and future household expenses.

11

reasonableness of their past medical expenses, and the trial court erred by concluding otherwise; (2) the trial court erred by excluding testimony by their treating physicians on the reasonable value of the services provided; (3) neither the absence of evidence of prior earnings nor the fact that Ochoa passed the federal trucker's medical exam justifies a new trial on damages for lost future earning capacity; and (4) the Williamsburg policy provided coverage, so Plaintiffs were insured and are entitled to recover noneconomic damages.

Defendants challenge the order denying their motion for JNOV and the order denying their motion in limine to exclude Pickersgill's testimony. They contend (1) the trial court found a complete absence of evidence to support the verdict as to damages for past and future medical expenses, lost future earning capacity, and future household expenses, so they are entitled to a JNOV rather than a new trial; and (2) the denial of their motion in limine to exclude Pickering's testimony was error.

## DISCUSSION

1. *The New Trial and JNOV Motions Were Premature and Are Thus Void*

Section 659, subdivision (a) states that a party moving for a new trial must file a notice of intention to move for a new trial "either: [¶] (1) After the decision is rendered and before the entry of judgment." [or] "[¶] (2) Within 15 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon him or her by any party of written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earliest . . . . " A notice of intention

12

to move for a new trial is deemed a new trial motion on the stated grounds.  (*Id.,* subd. (b).)  Section 629 states that a JNOV motion must be made within the time period specified in section 659 for filing a notice of intention to move for a new trial.

A notice of intention filed before the time permitted by statute is premature, void, and of no effect.  (*Fong Chuck v. Chin Po Foon* (1947) 29 Cal.2d 552, 553-554; *Tabor v. Superior Court* (1946) 28 Cal.2d 505, 507-508.)  A trial court has no jurisdiction to rule on a premature new trial motion, so any trial court proceedings or order on such a premature motion likewise are void and of no effect.  (*Fong Chuck*, *supra*, at pp. 553-554; *Tabor*, *supra*, at pp. 507-508.)  A premature JNOV motion and any ruling on the motion also are void and ineffective.  (*Meyser v. American Building Maintenance, Inc.* (1978) 85 Cal.App.3d 933, 937 (*Meyser*).)

"The concept of prematurity as applied to new trial proceedings is based on two major concepts—one is that to vest the trial court with the jurisdiction to pass on a motion for a new trial a timely notice must be made [citation].  The other is that the motion cannot be made until there is a decision in the case.  The statutory scheme on new trials makes it quite evident that a new trial is not proper until the action has been prosecuted to a point where it can be said to be complete.  [Citations.]  A new trial is defined as 'a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee.'  (Code Civ. Proc., § 656.)  Under section 657 of the Code of Civil Procedure a 'verdict may be vacated and any other decision may be modified or vacated' upon application for a new trial made by any 'party aggrieved.'  Until there has been a decision there is no aggrieved party.  [Citations.]  Based on these

13

propositions the cases have developed the rule that giving notice of intention to move for a new trial before the case is *decided* is 'premature,' and without legal effect. That is sound law." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 458-459 (*Auto Equity*).)

A "trial and decision" (§ 656) occurs only when all issues have been determined as to the party moving for a new trial, either by jury verdict, as to issues decided by the jury, or by the court, as to issues decided by the court. (*Auto Equity*, *supra*, 57 Cal.2d at p. 460; *In re Marriage of Hafferkamp* (1998) 61 Cal.App.4th 789, 793; see 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 56, pp. 641-642.) As to issues decided by the court, a decision is rendered when the court files its statement of decision or, if none was requested, when judgment is entered. (*Tabor v. Superior Court, supra,* 28 Cal.2d at p. 507; *Hafferkamp*, *supra*, at p. 793; see *Auto Equity*, *supra*, at p. 459.) "A notice of intention to move for a new trial is 'premature' and void if filed before there has been a 'trial and decision.' (Code Civ. Proc., § 656.)" (*Auto Equity*, *supra*, at p. 460.)

The trial court here deferred its ruling on Defendants' motion in limine No. 9, in which Defendants sought to exclude any evidence of or claim for noneconomic damages, until after the jury trial. The court heard testimony without a jury after the jury trial for the purpose of deciding whether Plaintiffs were insured at the time of the collision. We conclude that the legal effect of this was to order and conduct a separate trial by the court on such issue pursuant to section 1048, subdivision (b). When issues are tried separately, there is no "trial and decision" (§ 656) until all issues have been

14

decided. (*Meyser*, *supra*, 85 Cal.App.3d at p. 937; *Mays v. Disneyland, Inc.* (1963) 213 Cal.App.2d 297, 298-299; see Cal. Rules of Court, rule 3.1591(c).) Accordingly, there was no decision in this case at the time that the notice of intention to move for a new trial was filed, and there will be no decision for purposes of a new trial motion until a judgment is entered, absent a timely request for a statement of decision.

We therefore conclude that both the notice of intention to move for a new trial and the JNOV motion were premature and of no effect and are void for all purposes. The trial court had no jurisdiction to rule on the motions, so the order ruling on the motions also is void for all purposes as to such rulings. We therefore will reverse the order of March 8, 2012, as to the granting of a new trial and the denial of JNOV.[8]

2. *There Is No Judgment to Appeal*

The trial court entered no judgment on the verdict, entered no judgment after ruling on the motion to strike noneconomic damages, and has entered no judgment to this date. "In no case is a judgment effectual for any purpose until entered." (§ 664.) Defendants' appeal from "the judgment" therefore is of no effect and must be dismissed.

Defendants challenge the order denying Defendants' motion in limine No. 6 to exclude any testimony by Pickersgill. Such an order is interlocutory and is not one of

---

[8]    An order made appealable by statute is appealable even if the order is void. (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 366.) The proper procedure is to reverse a void order rather than dismiss the appeal from the order. (*Ruiz v. Ruiz* (1980) 104 Cal.App.3d 374, 379, fn. 5; *Avery v. Associated Seed Growers, Inc.* (1963) 211 Cal.App.2d 613, 630.)

15

the appealable orders listed in section 904.1, subdivision (a). Appellate review of such an interlocutory order may be obtained on appeal from a later judgment or appealable order. (§ 906.) Because no judgment has been entered and we are not reviewing the merits of any appealable order, the order denying the motion in limine is not reviewable at this time.

3. *The Order Striking the Award of Noneconomic Damages Is Nonappealable*

The order striking the award of noneconomic damages was a ruling on an issue that was tried separately by the court after the jury verdict, as stated. Such an order is interlocutory and is not one of the appealable orders listed in section 904.1, subdivision (a). The order is nonappealable; we therefore will dismiss Plaintiffs' appeal from the order.

4. *The Trial Court Must Enter Judgment Promptly on Remand*

The trial court must enter judgment promptly on remand so this matter may be concluded, and must consider and decide any timely posttrial motions that may be thereafter filed.

The parties have nonetheless fully briefed two legal questions that are important to the issues raised in those prematurely filed posttrial motions. As those questions are likely to arise again in postjudgment motions on remand, we will consider them in this opinion for the benefit of the trial court and counsel. Those questions are (1) whether unpaid medical bills are evidence of the reasonable value of the services provided and (2) whether a treating physician as a nonretained expert for whom no expert witness

16

declaration is provided may testify on the reasonable value of the medical services provided.

5.      *Unpaid Medical Bills Are Not Evidence of the Reasonable Value of the Services Provided*

A plaintiff may recover as damages for past medical expenses no more than the reasonable value of the services provided.  (*Howell*, *supra*, 52 Cal.4th at p. 555.)  Such damages are limited to the lesser of (1) the amount paid or incurred for past medical services, and (2) the reasonable value of the services.  (*Id.* at p. 556.)

*Howell*, *supra*, 52 Cal.4th 541, held that an injured plaintiff whose medical expenses are paid by private insurance can recover damages for past medical expenses in an amount no greater than the amount that the plaintiff's medical providers, pursuant to prior agreement, accepted as full payment for the services.  (*Id.* at p. 566.)  *Howell* rejected the argument that limiting the plaintiff's recovery in this manner would result in a windfall to the tortfeasor, stating that the full amount billed by medical providers is not an accurate measure of the value of the services provided.  (*Id.* at pp. 560-563.) *Howell* stated that there can be significant disparities between the amounts charged by medical providers and the costs of providing services (*id.* at pp. 560-562), the price of a particular service can "vary tremendously . . . from hospital to hospital in California" (*id.* at p. 561), and "a medical care provider's billed price for particular services is not necessarily representative of either the cost of providing those services or their market value" (*id.* at p. 564).  Although *Howell* did not expressly hold that unpaid medical bills

17

are not evidence of the reasonable value of the services provided, it strongly suggested such a conclusion.

Subsequently, we held in *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308 (*Corenbaum*) that the full amount billed for a plaintiff's medical care is not relevant to the determination of damages for past or future medical expenses, and therefore is inadmissible for those purposes, if the plaintiff's medical providers had agreed to accept a lesser amount as full payment for the services provided. (*Id.,* at pp. 1328, 1331.) We also held that the full amount billed cannot support an expert opinion on the reasonable value of future medical expenses and is inadmissible for the purpose of proving noneconomic damages. (*Id.* at pp. 1331-1333.) We stated that the observations in *Howell*, *supra*, 52 Cal.4th 541, compelled the conclusion that the full amount billed for past medical services was not relevant to the reasonable value of the services provided. (*Corenbaum*, *supra*, at pp. 1330–1331.) We explained:

"*Howell* stated that the full amount billed is not an accurate measure of the value of medical services, that there can be significant disparities between the amounts charged by medical providers and the costs of providing services, and that the price of a particular service can 'vary tremendously . . . from hospital to hospital in California' and 'a medical care provider's billed price for particular services is not necessarily representative of either the cost of providing those services or their market value.' (*Howell*, *supra*, 52 Cal.4th at pp. 560–562, 564.) These and other observations in *Howell* compel the conclusion that the full amount billed by medical providers is not relevant to the value of past medical services. For the same reason, the full amount

18

billed for past medical services is not relevant to a determination of the reasonable value of future medical services." (*Corenbaum*, *supra*, 215 Cal.App.4th at pp. 1330–1331.)

Thus, the full amount billed, but unpaid, for past medical services is not relevant to the reasonable value of the services provided. In our view, this rule is not limited to the circumstance where the medical providers had previously agreed to accept a lesser amount as full payment for the services provided. Instead, the observations in *Howell*, *supra*, 52 Cal.4th 541, and the reasoning in *Corenbaum*, *supra*, 215 Cal.App.4th 1308, summarized above compel the conclusion that the same rule applies equally in circumstances where there was no such prior agreement. *State Farm Mutual Automobile Ins. Co. v. Huff* (2013) 216 Cal.App.4th 1463, 1471-1472 (*State Farm*) reached this same conclusion.

*State Farm*, *supra*, 216 Cal.App.4th 1463, stated that the amount of a medical provider's lien pursuant to the Hospital Lien Act (Civ. Code, § 3045.1 et seq.) could not exceed the " 'reasonable and necessary' " charges for the services provided. (*State Farm*, *supra*, at pp. 1469-1470, quoting Civ. Code, § 3045.1.) *State Farm* concluded that an unpaid hospital bill based on the provider's standard medical charges was not evidence of the reasonable value of the services provided. (*Id.* at p. 1472.) Unlike the medical providers in *Howell*, *supra*, 52 Cal.4th 541, and *Corenbaum*, *supra*, 215 Cal.App.4th 1308, the medical provider had not previously agreed with the patient's health insurer to accept a lesser amount as full payment for the services provided. The patient in *State Farm* was uninsured. (*State Farm*, *supra*, at p. 1467.)

19

*State Farm*, *supra*, 216 Cal.App.4th 1463, stated, " 'the full amount billed by medical providers is not an accurate measure of the value of medical services' [citation] because 'many patients . . . pay discounted rates,' and standard rates 'for a given service can vary tremendously, sometimes by a factor of five or more, from hospital to hospital in California' [citation]." (*Id.* at p. 1471, quoting *Corenbaum*, *supra*, 215 Cal.App.4th 1308, and *Howell*, *supra*, 52 Cal.4th 541, respectively.) *State Farm* stated that the hospital bill itself was not an accurate measure of the reasonable value of the services provided, and the medical provider failed to present any evidence of reasonable value. (*Id.* at p. 1472.) *State Farm* therefore concluded that the evidence was insufficient to support a judgment in favor of the medical provider and reversed the judgment. (*Ibid.*)

This conclusion is entirely consistent with a line of authority holding or suggesting that unpaid medical bills are not evidence of the reasonable value of the services provided. *Latky v. Wolfe* (1927) 85 Cal.App. 332 (*Latky*) held that the plaintiffs' unpaid medical bills could not support an award of damages without some evidence that the amounts charged represented the reasonable value of the services rendered. (*Id.* at p. 347.) *Latky* distinguished *Dewhirst v. Leopold* (1924) 194 Cal. 424, 433 (*Dewhirst*), which had held that amounts paid for medical services were some evidence of the reasonable value of the services provided unless shown to the contrary, on the grounds that the bills in *Dewhirst* were actually paid.[9] (*Latky*, *supra*, at p. 347.)

---

[9]     *Dewhirst*, *supra*, 194 Cal. at page 433, stated, "Complaint is made that no evidence was offered by plaintiff to show that the amounts paid on account of medical treatment and attention were reasonable for the services performed. The amounts paid

*Latky* affirmed a judgment in favor of the plaintiffs, but reduced the damages award by the amount of the unpaid bills. (*Id.* at p. 347.)

*Gimbel v. Laramie* (1960) 181 Cal.App.2d 77 (*Gimbel*) held that the amount of an unpaid hospital bill was properly excluded from a damages award. (*Id.* at pp. 81-82.) The defendant in *Gimbel* had stipulated to the amount of the bill, but not its reasonableness. (*Id.* at p. 81.) *Gimbel* stated, "It has long been the rule that the cost alone of medical treatment and hospitalization does not govern the recovery of such expenses. It must be shown additionally that the services were attributable to the accident, that they were necessary and that the charges for such services were reasonable. [Citation.]" (*Ibid.*)

*Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70 (*Calhoun*) held that the exclusion of the plaintiff's unpaid medical bills was proper because there was no evidence that all of the services provided were made necessary by the incident in question and no evidence that the charges were reasonable. (*Id.* at p. 73.)

The California Supreme Court in *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 also suggested that unpaid medical bills are not evidence of the reasonable value of the services provided by stating: "Since invoices, bills, and receipts for repairs are hearsay, they are inadmissible independently to prove that liability for the repairs was incurred, that payment was made, or that the charges were reasonable. [Citations.] If, however, a party testifies that he incurred or

is some evidence of reasonable value, and there being no showing to the contrary such evidence must be held to be sufficient. [Citation.]"

discharged a liability for repairs, any of these documents may be admitted for the limited purpose of corroborating his testimony [citations], and *if the charges were paid, the testimony and documents are evidence that the charges were reasonable*. [Citations.] Since there was testimony in the present case that the invoices had been paid, the trial court did not err in admitting them." (*Id.* at pp. 42-43, italics added.)

Other opinions, in contrast, have held or suggested that unpaid medical bills are some evidence of the reasonable value of the services provided. *Malinson v. Black* (1948) 83 Cal.App.2d 375 (*Malinson*) rejected the defendant's attack on an award of damages for past medical expenses. The defendant argued that the bills were unpaid and that there was no evidence of the reasonable value of the services provided. *Malinson* stated, "It is well settled that the amount paid is some evidence of reasonable value and in the absence of any showing to the contrary such evidence has been held to be sufficient. Likewise, it would seem that evidence of the expense incurred would be some evidence of reasonable value. [Citations.]" (*Id.* at p. 379, citing *Dewhirst*, *supra*, 194 Cal. 424, and other cases involving only amounts paid.)

*Guerra v. Balestrieri* (1954) 127 Cal.App.2d 511 (*Guerra*) rejected the defendant's challenge to an instruction on damages for past medical expenses. *Guerra* agreed that it was error to give the instruction because there was no evidence of the cost of the services provided, but held that the error was not prejudicial because it was unlikely that the verdict included any amount for past medical services. (*Id.* at p. 520.) *Guerra* stated, "The proper measure is the reasonable value of such services, not the

amount paid or incurred therefor, although the amount paid or incurred would be some evidence of value.  [Citation.]"  (*Ibid.*)

*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288 (*Katiuzhinsky*) held that the trial court erred by excluding evidence of the full amounts billed for medical services and limiting the plaintiffs' recovery to the discounted amounts paid by a lien purchaser. The medical providers accepted the discounted amounts as full payment for the accounts, but plaintiffs remained liable to the lien purchaser for the full amounts billed. (*Id.* at pp. 1291-1292.)  *Katiuzhinsky* held that the plaintiffs' recovery was not limited to the discounted amounts because the plaintiffs remained liable to the lien purchaser for the full amounts billed, and because the medical providers were not obligated to sell the accounts at a discount and had no prior agreement to do so.  (*Id.* at pp. 1296-1298.) *Katiuzhinsky* also held that the exclusion of the unpaid medical bills was error, stating that the bills were evidence of the reasonable value of the services provided.  (*Id.* at pp. 1295-1296.)  *Katiuzhinsky* stated that regardless of whether the accounts were later sold, "the charges billed to plaintiffs reflected on the reasonable value of the services they received."  (*Id.* at p. 1297.)

We find the reasoning in *Malinson*, *supra*, 83 Cal.App.2d 375, *Guerra*, *supra*, 127 Cal.App.2d 511, and *Katiuzhinsky*, *supra*, 152 Cal.App.4th 1288, unpersuasive and decline to follow those opinions on this point.  For the reasons stated in *Howell*, *supra*, 52 Cal.4th 541, and *Corenbaum*, *supra*, 215 Cal.App.4th 1308, we conclude that an unpaid medical bill is not an accurate measure of the reasonable value of the services provided.  Consistent with those opinions and *Latky*, *supra*, 85 Cal.App. 332, *Gimbel*,

23

*supra*, 181 Cal.App.2d 77, *Calhoun*, *supra*, 230 Cal.App.2d 70, and *State Farm*, *supra*, 216 Cal.App.4th 1463, we conclude that an unpaid medical bill is not evidence of the reasonable value of the services provided. We therefore conclude that evidence of unpaid medical bills cannot support an award of damages for past medical expenses.

6.     *No Expert Witness Declaration Is Required for a Treating Physician Offering an Opinion Based on Facts Acquired in the Physician-Patient Relationship*

A party must identify its expert witnesses before trial in response to a demand for exchange of expert witness information under Code of Civil Procedure section 2034.210. This requirement applies to both retained and nonretained experts. (§§ 2034.210, subd. (a), 2034.260, subd (b)(1); *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 35.) For retained experts and experts who are parties or employees of parties, the exchange must also include an expert witness declaration stating the general substance of the expected testimony and other matters. (§§ 2034.210, subd. (b), 2034.260, subd. (c).) Failure to provide an expert witness declaration or failure to adequately disclose the expert's expected testimony may result in the exclusion of expert opinion. (§ 2034.300; *Bonds v. Roy* (1999) 20 Cal.4th 140, 148-149.) But for a treating physician who is not "retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial" (§ 2034.210, subd. (b)), no expert witness declaration is required (*Schreiber*, *supra*, at p. 39), and the exclusion sanction is unavailable.[10]

---

[10]     Treating physicians generally are not "retained" experts within the meaning of section 2034.210, subdivision (b). (*Schreiber*, *supra*, 22 Cal.4th at p. 36, citing former

"A treating physician is a percipient expert, but that does not mean that his testimony is limited to only personal observations. Rather, like any other expert, he may provide both fact and opinion testimony. As the legislative history clarifies, what distinguishes the treating physician from a retained expert is not the content of the testimony, but the context in which he becomes familiar with the plaintiff's injuries that were ultimately the subject of litigation, and which form the factual basis for the medical opinion. The contextual nature of the inquiry is implicit in the language of [former] section 2034, subdivision (a)(2), which describes a retained expert as one 'retained by a party *for the purpose* of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action.' (Italics added.) A treating physician is not consulted for litigation purposes, but rather learns of the plaintiff's injuries and medical history because of the underlying physician-patient relationship." (*Schreiber*, *supra*, 22 Cal.4th at pp. 35-36.)

The identity and opinions of retained experts generally are privileged unless a party expects to offer their expert opinion at trial, and whether they will testify at trial need not be disclosed until shortly before trial. (*Schreiber*, *supra*, 22 Cal.4th at p. 37.) In contrast, the identity and opinions of treating physicians are not privileged, and they are subject to ordinary discovery with no special restrictions. (*Id.* at p. 38.) "Indeed, defendants have a strong incentive to depose treating physicians well prior to the

---

§ 2034, subd. (a)(2).) Section 2034.210, subdivision (b) continues former section 2034, subdivision (a)(2) without substantive change. (See Cal. Law Revision Com. com., 21A West's Ann. Code Civ. Proc. (2007 ed.) foll. § 2034.210, p. 505.)

exchange of expert information to ascertain whether their observations and conclusions support the plaintiff's allegations. [Citation.] . . . [¶] Accordingly, the Legislature has apparently determined that by the time of the exchange of expert witness information, the information required by the expert witness declaration is unnecessary for treating physicians who remain in their traditional role." (*Id.* at p. 38, fn. omitted.)

"[T]o the extent a physician acquires personal knowledge of the relevant facts independently of the litigation, his identity and opinions based on those facts are not privileged in litigation presenting 'an issue concerning the condition of the patient.' [Citations.] For such a witness, no expert witness declaration is required, and he may testify as to any opinions formed on the basis of facts independently acquired and informed by his training, skill, and experience. This may well include opinions regarding causation and standard of care because such issues are inherent in a physician's work." (*Schreiber*, *supra*, 22 Cal.4th at p. 39, quoting Evid. Code, § 996, fn. omitted.)

Accordingly, no expert witness declaration is required for treating physicians to the extent that their opinion testimony is based on facts acquired independently of the litigation, that is, facts acquired in the course of the physician-patient relationship and any other facts independently acquired. (*Schreiber*, *supra*, 22 Cal.4th at p. 39; *Dozier v. Shapiro* (2011) 199 Cal.App.4th 1509, 1520.) We conclude that this includes an opinion as to the reasonable value of services that the treating physician either provided to the plaintiff or became familiar with independently of the litigation, assuming that the treating physician is qualified to offer an expert opinion on reasonable value. A treating

physician who has gained special knowledge concerning the market value of medical services through his or her own practice or other means independent of the litigation may testify on the reasonable value of services that he or she provided or became familiar with as a treating physician, rather than as a litigation consultant, without the necessity of an expert witness declaration. To the extent that a treating physician became familiar with services provided to the plaintiff or other facts for the purpose of forming and expressing an opinion in anticipation of litigation or in preparation for trial, however, he or she acts as a retained expert. An expert witness declaration is required for such a treating physician to the extent that he or she testifies as a retained expert. (§ 2034.210, subd. (b); *Dozier*, *supra*, at p. 1521.)

The trial court here found that Dr. Schiffman acted as a treating physician at all times and did not act as an expert retained for purposes of this litigation.[11] Yet the court precluded Dr. Schiffman and any other nonretained treating physician from testifying on the reasonable value of *their* services provided to Plaintiffs. We conclude that this was error and that Plaintiffs were entitled to present testimony by any nonretained treating physician on the reasonable value of medical services that he or she provided or became familiar with as a treating physician, as long as such testimony is based on facts acquired in the physician-patient relationship or otherwise acquired independently of this litigation, and not acquired for the purpose of forming and expressing an opinion in anticipation of litigation or in preparation for trial.

---

[11]    We need not address at this time Defendants' argument that the trial court erred in so finding.

27

## *DISPOSITION*

The order of March 8, 2012, is reversed as to the granting of a partial new trial and the denial of JNOV, and is void in all respects as to the rulings on the new trial and JNOV motions. Plaintiffs' appeal from the order striking the awards of noneconomic damages and Defendants' appeal from "the judgment" are dismissed. The trial court is directed to enter judgment promptly on remand and conduct further proceedings on any postjudgment motions in a manner consistent with the views expressed in this opinion. Each party must bear its own costs on appeal.

### *CERTIFIED FOR PUBLICATION*

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.

28