Filed 6/11/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | D062550 |
| Plaintiff, | |
| v. | (Super. Ct. No. ECU06448) |
| MICHAEL HUFF, | |
| Defendant and Appellant; | |
| PIONEERS MEMORIAL HEALTHCARE DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B.

Donnelly, Judge. Reversed and remanded with directions.


Nordstrom, Steele, Nicolette and Blythe, Alan K. Nicolette; Guizot & Mouser,

Damon Guizot and Marlena J. Mouser for Defendant and Appellant.

Franklin J. Love for Defendant and Respondent.

In this interpleader action, Michael Huff appeals the judgment awarding Pioneers Memorial Healthcare District (the District) a portion of the damages he recovered in a personal injury action against third parties arising out of a motor vehicle collision. The District provided collision-related medical services to Huff at one of its hospitals for which he did not pay. When Huff later obtained a judgment for damages against the third parties who caused his injuries, the District asserted a lien on Huff's damages recovery pursuant to the Hospital Lien Act (Civ. Code, §§ 3045.1-3045.6). Huff contends the District was not entitled to any of the damages because it did not prove the charges for its services were "reasonable and necessary." (*Id.*, § 3045.1.) We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Huff sustained serious injuries in a motor vehicle collision involving Steven and Matthew Wilkins. (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 736-737 (*Huff*).) Huff was taken to Pioneers Memorial Hospital, a facility operated by the District, where he received treatment for his injuries over the course of seven days. At the time of discharge, Huff owed the District $34,320.86 for medical services. The District never received payment for these services.

Huff subsequently sued the Wilkinses for negligence. (*Huff*, *supra*, 138 Cal.App.4th at p. 737.) After a jury trial, he obtained a judgment on special verdict against them for $356,587.92 in damages. The jury found that Huff's past medical expenses totaled $232,708.80.

Shortly after entry of judgment, a collection agency acting on behalf of the District sent the Wilkinses' insurer, State Farm Mutual Automobile Insurance Company (State

2

Farm), a written notice pursuant to the Hospital Lien Act that the District was claiming a lien in the amount of $34,320.86 on any damages State Farm might pay Huff. Huff disputed the amount of the lien and demanded that State Farm pay the entire judgment amount to him and his attorneys.

Faced with conflicting claims to a portion of the funds to be paid to satisfy Huff's judgment against the Wilkinses, State Farm filed an interpleader action against Huff and the District, and deposited the amount of the District's claimed lien with the trial court. (See Code Civ. Proc., § 386, subd. (b).)[1] The conflicting claims of Huff and the District then proceeded to a bench trial.

At the trial, four witnesses testified and several documents were introduced as evidence:

(1) The District's director of patient accounting authenticated a copy of Huff's hospital bill, which the court admitted into evidence. He testified the bill remains unpaid and the itemized charges listed on the bill were based on standard rates applicable to all patients. The director admitted he is not a doctor or a nurse and never met or talked to Huff.

(2) The District's former patient financial counselor testified she spoke to Huff while he was in the hospital to discuss why he was there, whether he had insurance, and what programs might be available for payment of his medical expenses. Huff told her

---

[1]     Initially, State Farm included two other hospitals as defendants in the interpleader action. Those hospitals later withdrew their lien claims and were dismissed from the action, leaving only the District's lien claim for resolution.

"he didn't have any insurance and [she] should be billing the person responsible for the accident."

(3)     The general manager of the collection agency acting on behalf of the District testified that he served State Farm by certified mail with a notice of hospital lien concerning Huff's unpaid bill.  The court admitted a copy of the notice into evidence.  The general manager also testified the current balance due on Huff's bill was $34,320.86.  He admitted he had no personal knowledge about the actual services the District furnished Huff.

(4)     An attorney who represented Huff in his negligence action against the Wilkinses testified that at the trial of that action he introduced evidence of all of the medical expenses Huff incurred during his hospitalization at the District's hospital.  The attorney also authenticated a copy of the judgment on special verdict in Huff's negligence action against the Wilkinses, which the court admitted into evidence.

After hearing argument from counsel and taking the matter under submission, the trial court ruled the District "met its burden to establish a valid and enforceable claim of lien for emergency medical care and services under the [Hospital Lien Act]."  Specifically, the court found:  (1) the testimony of the District's patient financial counselor established that Huff had received medical services at the District for injuries caused by a third party; (2) the testimony of the District's director of patient accounting established that the District has not been paid for those services; and (3) the testimony of the District's director of patient accounting and the general manager of the collection agency retained by the District established that the District gave State Farm valid notice

4

of its lien.  The trial court also ruled the District was "not required under the [Act] to present expert testimony or otherwise affirmatively prove that the amounts it claims in the lien are for 'reasonable and necessary charges.'"  According to the court:

> "[T]he authenticated hospital statement of charges serves as prima facie evidence that services were rendered and billed for. . . .  [The Act] does not require a detailed description of the services, much less an expert declaration of reasonableness and necessity.  That would gravely impair the utility of the statutory lien as a low[-]cost, simpler, and speedier alternative to litigation.  In addition, the requirement that medical services be proven to have been 'reasonable and necessary' traditionally only applies for the purpose of proving causation and damages in contested tort cases.  It need not be proved in collections cases on 'common counts' and should have no application to the alternative statutory enforcement of a lien on a debt.  Had the legislature intended to impose such additional requirement, it would have so specified in the statutory language."

Based on these rulings, the trial court entered judgment in favor of the District for $34,320.86, less its pro rata share of the costs and attorney fees incurred by State Farm.  (See Code Civ. Proc., § 386.6, subd. (a).)

                                    DISCUSSION

Huff contends the judgment must be reversed because the trial court erroneously relieved the District of its burden under the Hospital Lien Act to prove the charges for the services it provided Huff were reasonable and necessary, and the District submitted no evidence to establish the reasonableness or necessity of those charges.  The District counters that the judgment must be affirmed because sufficient circumstantial evidence established the charges were reasonable and necessary, and Huff did not prove otherwise.  As we shall explain, we agree with Huff.

5

A.     *Standard of Review*

We review the trial court's construction of the Hospital Lien Act de novo.  (*Weston Reid, LLC v. American Ins. Group, Inc.* (2009) 174 Cal.App.4th 940, 946.)  In considering a challenge to the sufficiency of the evidence to sustain a judgment, we examine the record to determine whether it contains substantial evidence (i.e., evidence that is reasonable, credible, and of solid value), resolving all conflicts and drawing all reasonable inferences in favor of the party who prevailed at trial.  (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188; *Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 506-507.)

B.     *Legal Analysis*

To resolve this appeal, we must answer two related questions.  First, must a hospital asserting a right under the Hospital Lien Act to a portion of judgment proceeds payable to an injured person treated by the hospital prove that its claimed charges were reasonable and necessary?  Second, did the District meet its burden of proof in this case?  As we shall explain, the answers to these questions are, respectively, yes and no.

We look first to the language of the Hospital Lien Act to determine what a hospital must prove to enforce its lien rights, because a lien under the Act is statutory and thus subject to definition and limitation by the Legislature.  (*Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595, 602 (*Parnell*).)  Under the Act, a licensed hospital that provides medical or other services to a person injured by the negligent or other wrongful act of a third party "shall, if the person has a claim against [the third party] for damages on account of his or her injuries, have a lien upon the damages recovered, or to

6

be recovered, by the person . . . *to the extent of the amount of the reasonable and necessary charges of the hospital* . . . for the treatment, care, and maintenance of the person in the hospital" resulting from the third party's negligent or other wrongful act. (Civ. Code, § 3045.1, italics added.) "The lien shall apply whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise." (*Id.*, § 3045.2.) For the lien to become effective, the hospital must provide written notice of, among other things, "the amount claimed as reasonable and necessary charges" to the third party alleged to be liable to the injured person and to any known insurer of that third party. (*Id.*, § 3045.3.) Finally, the Act imposes liability on a properly notified third party or insurer for the amount the hospital was entitled to receive as payment for treating the injured person if the third party or insurer pays the injured person without first paying the hospital as much of the lien amount as can be paid from 50 percent of the amount due under a final judgment, settlement, or compromise after payment of prior liens. (*Id.*, § 3045.4.)

Together, the provisions of the Hospital Lien Act create "a statutory nonpossessory lien" that "compensates a hospital for providing medical services to an injured person by giving the hospital a direct right to a certain percentage of specific property, i.e., a judgment, compromise, or settlement, otherwise accruing to that person." (*Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 217 (*Mercy Hospital*).) The Act expressly places two limitations on the amount the hospital has a direct right to recover based on its lien: (1) the lien is limited to "the amount of the reasonable and necessary charges of the hospital" for the services

7

provided to the injured person on account of the third party's negligent or other wrongful act; and (2) recovery on the lien is limited to 50 percent of the settlement or judgment proceeds recovered by the injured person from the third party, after payment of prior liens. (Civ. Code, §§ 3045.1, 3045.4; *Mercy Hospital*, at pp. 215-216; *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 18.) The Act does not, however, specify who bears the burden of proof on the amount a hospital may recover when it asserts its statutory lien rights to a portion of the settlement or judgment proceeds to be paid to the injured person by the third party.

We therefore must look to the default rules regarding burden of proof. "Except as otherwise provided by statute," (1) "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting" (Evid. Code, § 500), and (2) "the burden of proof requires proof by a preponderance of the evidence" (*id.*, § 115). Courts have applied these rules to claimants in interpleader actions. (See, e.g., *Division Labor Law Enfmt. v. Brooks* (1964) 226 Cal.App.2d 631, 633 [interpleaded funds "must be disposed of, but only to a claimant who establishes his own affirmative right"]; *Marine Indem. Ins. Co. v. Lockwood Warehouse & Storage* (5th Cir. 1997) 115 F.3d 282, 289 [claimant to interpleaded funds "had the burden of establishing by the preponderance of the evidence that it was entitled to recover"]; *Travelers Ins. Co. v. Keith* (1973) 283 N.C. 577, 580 [196 S.E.2d 731, 734] ["Each [interpleader claimant] has the burden of establishing his right to the fund by the greater weight of the evidence."].) Courts have also held in other contexts that a lien claimant has the burden of proof to establish the validity and amount of its lien by a

8

preponderance of the evidence. (See, e.g., *Zenith Ins. Co. v. Workers' Comp. Appeals Bd.* (2006) 138 Cal.App.4th 373, 376 [medical provider lien]; *Boehm & Associates v. Workers' Comp. Appeals Bd.* (2003) 108 Cal.App.4th 137, 150 [same]; *Basic Modular Facilities, Inc. v. Ehsanipour* (1999) 70 Cal.App.4th 1480, 1485 [mechanic's lien]; *People v. One 1952 Ford Sedan* (1956) 146 Cal.App.2d 183, 184, 187 [lender's lien on forfeited automobile].) We thus hold the District, as a party asserting a right to the interpleaded funds under the Hospital Lien Act, had the burden to prove by a preponderance of the evidence the amount of its lien, i.e., "the amount of the reasonable and necessary charges" for the "emergency and ongoing medical or other services" it furnished Huff. (Civ. Code, § 3045.1.)

We do not believe that imposing this burden on a hospital will, as the trial court feared, impair the utility of the statutory lien remedy. The Hospital Lien Act "was originally enacted in 1961 to allow hospitals to recoup losses suffered when a patient 'failed to discharge *any* portion of the hospital bill' even though that patient had 'collected upon a cause of action against another.'" (*Parnell*, *supra*, 35 Cal.4th at pp. 603-604.) At the same time, the Act was intended to "ensur[e] that the patient retained sufficient funds to address other losses resulting from the tortious injury." (*Mercy Hospital*, *supra*, 15 Cal.4th at p. 217.) In balancing these competing interests, the Legislature limited the amount of a hospital's lien on the settlement or judgment proceeds that a tortfeasor pays an injured person to "the reasonable and necessary charges of the hospital" for treating the injury (Civ. Code, § 3045.1) — the same amount of medical expenses the injured person may recover as damages from the tortfeasor (see *Melone v. Sierra Railway Co.*

9

(1907) 151 Cal. 113, 115 [in personal injury case, plaintiff may recover the "reasonable sum . . . as has been necessarily expended or incurred in treating the injury"]; accord, *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 555 (*Howell*)).  To maintain that balance, a hospital seeking to enforce a lien under the Act must prove "the amount of the reasonable and necessary charges" for treating the injured person.  (Civ. Code, § 3045.1.)  With ready access to the injured person's medical records and to health care professionals and others competent to assess the need for and cost of medical treatment (and in some cases to evidence on these matters introduced in a related personal injury action), the hospital should have little difficulty meeting that burden.

Here, however, the District failed to sustain its burden of proof at trial.  The only evidence concerning the amount of its lien the District introduced was an authenticated copy of Huff's hospital bill, which totaled $34,320.86, and related testimony that the bill remains unpaid and was based on the District's standard charges for the services itemized in the bill.  But "the full amount billed by medical providers is not an accurate measure of the value of medical services" (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1326 (*Corenbaum*)) because "many patients . . . pay discounted rates," and standard rates "for a given service can vary tremendously, sometimes by a factor of five or more, from hospital to hospital in California" (*Howell*, *supra*, 52 Cal.4th at p. 561).  Thus, just as "the cost alone of medical treatment and hospitalization does not govern the recovery of such expenses" by an injured person from a tortfeasor (*Gimbel v. Laramie* (1960) 181 Cal.App.2d 77, 81), that cost alone does not govern the recovery by a hospital asserting a lien under the Hospital Lien Act on the settlement or judgment proceeds the injured

10

person receives from the tortfeasor (Civ. Code, § 3045.1 [limiting lien to amount of "reasonable and necessary charges" for treatment of person injured by tortfeasor]). "It must be shown additionally that the services were attributable to the accident, that they were necessary and that the charges for such services were reasonable." (*Gimbel*, at p. 81; accord, *Howell*, at pp. 551, 555; *McAllister v. George* (1977) 73 Cal.App.3d 258, 264 (*McAllister*); *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 73 (*Calhoun*).) The District, however, did not make this required additional showing.

At trial, the District introduced no evidence the charges in Huff's hospital bill were reasonable or were for necessary treatment attributable to the motor vehicle collision. To be sure, the testimony of the District's former patient financial counselor that Huff told her he was in an accident, the testimony of the attorney who represented Huff in his negligence action against the Wilkinses that he introduced evidence of the expenses Huff incurred at the District's hospital, and the judgment in that action awarding him past medical expenses, constituted circumstantial evidence that Huff needed *some* medical treatment as a result of the motor vehicle collision. But there was no testimony or other evidence that any of the *specific* services itemized in Huff's bill were reasonably required as a result of the collision. (See Civ. Code, § 3045.1 [limiting lien to amount of "necessary" charges for treatment of person injured by tortfeasor]; *McAllister*, *supra*, 73 Cal.App.3d at pp. 264, 264-265 [when "plaintiff introduced no medical testimony that the dental work was reasonably required as a result of the battery," "no dental costs were recoverable"].) The District also introduced no evidence of the reasonable value of any of the services itemized in Huff's bill. (See Civ. Code, § 3045.1 [limiting lien to amount

11

of "reasonable" charges for treatment of person injured by tortfeasor]; *Guerra v. Balestrieri* (1954) 127 Cal.App.2d 511, 520 ["There should be some evidence concerning the value of professional services of a physician and surgeon."].)  The bill itself was based on the District's standard charges and thus "is not an accurate measure of the value of medical services."  (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1326.)  The only other evidence regarding the value of Huff's medical care was the special verdict of $232,708.80 for past medical expenses in his negligence action against the Wilkinses. Although Huff's attorney in that action introduced evidence of all of the District's charges ($34,320.86), the special verdict obviously includes the charges of other providers, and the record does not indicate what portion, if any, of the District's charges the jury considered reasonable and included in that verdict.  Finally, the District's witnesses did not establish that they had the personal knowledge or the professional qualifications needed to testify regarding either the necessity or the reasonable value of any of the services for which Huff was billed.  Without evidence of these essential matters, the District was not entitled to enforce a lien under the Hospital Lien Act to recover the charges it claimed in Huff's bill.  (See Civ. Code, § 3045.1; *McAllister*, at pp. 264-265; *Calhoun*, *supra*, 230 Cal.App.2d at p. 73; *Guerra*, at p. 520.)

In sum, we conclude the judgment must be reversed because the District did not present sufficient evidence of the amount of its lien, as it was required to do to recover under the Hospital Lien Act.  We also conclude that because the District had a full and fair opportunity at trial to prove it was entitled to the interpleaded funds but did not do so, and because Huff's judgment against the Wilkinses shows he is entitled to those funds,

12

Huff is entitled to judgment in his favor.  (See *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1066; *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 289; *California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1810.)

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to enter judgment in favor of Huff.  In the interests of justice, the parties are to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


_____

IRION, J.

WE CONCUR:


_____

BENKE, Acting P. J.


_____

O'ROURKE, J.

13