Filed 7/26/16  Frisk v. Cowan CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

### (Amador)

----

| | |
|---|---|
| TARA FRISK, | C077975 |
| Plaintiff and Respondent, | (Super. Ct. No. 10-CVC-06852) |
| v. | |
| CATHERINE MARGARET COWAN, | |
| Defendant and Appellant. | |

A jury found defendant Catherine Margaret Cowan liable in a personal injury action, and awarded plaintiff Tara Frisk $3,695,978.59 in compensatory and punitive damages, including $109,162.59 for past medical expenses and $1,084,457 for future medical expenses.  Cowan appeals, contending the trial court prejudicially erred by (1) excluding her expert's testimony regarding average payments accepted by medical providers as evidence of the reasonable value of medical services provided, and (2) permitting Frisk to rely on billed amounts alone as evidence of the reasonable value of medical services provided, especially as Frisk had not shown she was liable to pay the

1

entire amount charged. We will reverse the judgment and remand for a retrial on damages for past and future medical expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

Cowan is a diabetic who, as a result of low blood sugar, lost consciousness while driving her car and collided head-on with Frisk. As a result of her injuries from the collision, Frisk underwent medical treatment, including a disc replacement surgery, which was financed through a private financing scheme with Creative Legal Funding (hereafter the lienholder). Frisk sought medical damages to compensate her for past and future medical expenses incurred as a result of the collision. In light of the issues raised on appeal, aside from this brief introduction, we recite only those facts relevant to the jury's award of medical damages.

Prior to trial, Frisk moved in limine to exclude the opinion of Cowan's expert witness, Timothy Sells, a life care planner. Based on his deposition testimony, it was anticipated Sells would present evidence regarding what is generally paid by Medi-Cal and private insurance for the same medical procedures Frisk had received and was likely to receive. It was also anticipated Sells would not present any explanation of the relationship between these reimbursement rates and the amounts providers charged Frisk for services rendered. Further, it was anticipated Sells would not express an opinion as to a reasonable value for the surgery Frisk received, but would instead present the range of what is typically charged. Though the trial court initially denied this motion, it decided to conduct a foundational hearing pursuant to Evidence Code section 402 before allowing Sells to testify.

At the foundational hearing, the parties first argued whether evidence of payment rates (by Medi-Cal, private insurance, or other government benefits agencies) was relevant or admissible to establish the reasonable value of medical services provided. At issue, aside from Sells's testimony, was an exhibit he planned to present that showed the

2

amounts paid for medical services at local hospitals, with information drawn from a publicly available data pool. Sells then testified that he would present to the jury "evidence as to what the usual, customary, and reasonable charges are and what the average reimbursement rates are for the same service, where applicable and where available . . . ." He acknowledged that the reimbursement rates were drawn from instances where there was a private health insurer. He also conceded that he did not know whether the reimbursement rates "ha[d] anything to do with the reasonable value of the surgery" and that to opine otherwise would be speculation. He further testified that information about what a surgeon is typically paid is not available, so he relied on the typical charges (from the 75th to the 90th percentile) in preparing his testimony. Ultimately, the trial court ruled that Sells could present his opinion as to the reasonable value of services provided and how he calculated that amount, but that he could not reference any average payments by insurance or government agencies.

Sells ultimately testified to the jury that he had been retained to "evaluate . . . the costs" associated with the disc replacement surgery Frisk had received and also to look at the costs related to anticipated future surgeries. He did not challenge the opinion of Frisk's expert that the charges for her hospitalization associated with the disc replacement surgery were reasonable, nor did he have any opinion regarding the reasonableness of the surgeon's charges associated with that procedure, though he noted that it was more than twice what was charged in 90 percent of such cases. Sells acknowledged that he had no evidence regarding how often the surgeon involved collected the full amount charged ($36,000), but noted the surgeon was paid $9,000 by the lienholder in this case. He also conceded that the amount the medical provider accepted from a third party was not relevant to his opinion regarding the reasonableness of any medical charges. With respect to future surgeries, he opined that a hospital charge that fell between the 75th and 90th percentile would be reasonable. He also acknowledged that the disparity between

3

his projection of reasonable charges for future surgeries and that offered by Frisk's expert ($317,514) could be accounted for based on his exclusion of $24,000 of necessary hardware and $4,000 for preoperative and postoperative work, which Sells was not asked to consider.

In a further colloquy outside the presence of the jury, Cowan argued that Sells's testimony regarding *average payments* by insurance or government agencies should be allowed because "the reasonable [value of the services] is the amount that is paid, and it would be the average amount paid in the general community, is what we have here. It's not what's billed." In the course of that colloquy, the trial court asked Sells to articulate his anticipated testimony regarding the reasonable value of future medical services. He stated he would indicate what the average payments had been for such services, but that he would not state that those payments were the reasonable value for services because he was "not sure what reasonable value is." After considering the matter, the trial court ruled that it was inappropriate to allow into evidence for the purpose of establishing the reasonable value of medical services the average payments made by insurers where there was no evidence Frisk was or would be insured for those procedures. When Sells returned to his testimony before the jury, he testified based only on the *amounts charged* by local providers.

Cowan also moved in limine to preclude admission of the amounts billed for medical care, and to prevent Frisk's expert, Lawrence Lievense, from testifying about what her future medical charges will be. Cowan's argument was that the billed amount (for past or future medical charges) did not reflect the reasonable value of services as a matter of law, so Frisk was not entitled to an award of damages based on that amount and the expert could not reasonably rely on such information in forming his opinion. The trial court reserved ruling on both motions, but ultimately permitted the evidence to be admitted.

4

Lievense was a healthcare financial administrator, whose job responsibilities included a focus on medical billing charges and payments. He testified that in assessing whether the amounts billed for Frisk's procedures and hospital stays were reasonable, he "look[ed] at the procedure done and compare[d] that to the same or similar procedures being done at the same or similar type of facilities." He would then conduct essentially a "smell test" to determine if any charges stood out as inappropriate, and then confirm his analysis by comparing the charges with the range of charges for such services listed in available databases. In this case, it was Lievense's opinion that the amounts billed by providers for medical services rendered to Frisk "fell within the range of usual, customary, and reasonable" charges.

## DISCUSSION

Cowan contends the trial court made prejudicial evidentiary errors by (1) permitting Frisk to present amounts charged by medical providers to establish the reasonable value of her past and future medical damages, and (2) precluding Cowan from presenting evidence of payments typically received by medical providers for the same services rendered or anticipated to be rendered to Frisk. On the facts before us, we agree. Prior to addressing these contentions, however, we must address Cowan's contention that Frisk did not provide sufficient evidence to support the conclusion that she was liable to pay the entire billed amount. As to that contention, we disagree. Cowan also contends that as a result of the evidentiary errors, she is entitled to a new trial as to all issues, or at least as to all compensatory damages. We disagree, and will remand to the trial court for a retrial as to medical damages only.

### 1.0    Proof of Liability to Pay

We first address Cowan's contention that Frisk failed to show she was liable for the full amount of the lien. Cowan's claim appears to be that because Frisk did not present at trial the signed documents reflecting her agreement that she would be liable to

5

pay the lienholder the full amount billed, Frisk failed to meet her burden in that regard. Based on the testimony presented at trial, we disagree.

At trial, a representative of the lienholder testified that prior to its agreement to purchase the liens from the medical providers, the lienholder required Frisk to sign documents indicating that she would be liable to pay the lienholder if the lien amount was not recovered in litigation. Specifically, the representative testified the documents provide that "Ms. Frisk is responsible for the total amount of the bill regardless of the outcome of the case." The representative further testified that she had signed agreements from Frisk indicating her liability to repay the full billed amount, and that the lienholder would not have agreed to finance the procedures if Frisk had not agreed to repay the lienholder. Additionally, in Frisk's testimony to the jury, she acknowledged that she knew she would owe a great sum of money when she decided to have surgery and that her understanding was that she owed the lienholder the full amount billed by the medical providers. This amounts to substantial evidence to support a finding that Frisk is liable to repay the full billed amount to the lienholder, thereby making that the "amount incurred" by plaintiff.

## 2.0    Medical Damages Evidence

We next address Cowan's contentions that the trial court prejudicially erred by admitting evidence of the amounts billed and excluding evidence of average amounts accepted by medical providers for purposes of determining the reasonable value of medical services rendered. As we shall explain, we agree with Cowan's contentions.

### 2.1    *Standard of Review*

Trial courts ordinarily enjoy broad discretion with respect to the admission and exclusion of evidence in ruling on motions in limine. (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294 (*Katiuzhinsky*).) Nonetheless, that discretion "is limited by

6

the legal principles applicable to the case." (*Ibid*.) Where a trial court's exclusion or admission of evidence " ' "transgresses the confines of the applicable principles of law," ' " it is an abuse of discretion. (*Ibid.*) Thus, to determine whether the trial court abused its discretion by admitting evidence of the amount billed as evidence of the reasonable value of medical services or in excluding evidence of average amounts paid as evidence of the reasonable value of medical services, we must first determine what the law permits and requires with respect to the recovery of medical damages.

## 2.2 *Summary of Existing Case Law*

We begin our review of the evolving case law in the area of medical damages with *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635. In that case, we stated that the appropriate measure of recovery for special damages for medical expenses in a tort action is "the reasonable value of medical care and services reasonably required and attributable to the tort." (*Id*. at p. 640.) We further held, pursuant to the collateral source rule, that a plaintiff was entitled to recover medical costs even if a third party, such as a health insurance provider, has paid the costs. (*Id.* at pp. 639-640.) Finally, we concluded that the trial court had erred in awarding the plaintiff in that case special damages for medical expenses in excess of the amount actually paid for the medical services. (*Id.* at p. 644.)

Thereafter, in *Katiuzhinsky*, *supra*, 152 Cal.App.4th 1288, we concluded that where the plaintiff remained liable to pay the full amount billed for medical services rendered it was error for the trial court to exclude evidence of that amount for purposes of establishing the reasonable value of services rendered or for calculation of the jury's damages award. (*Id*. at pp. 1291, 1297-1298.) In *Katiuzhinsky*, the plaintiffs were injured in an automobile accident and received treatment from medical providers as part of an arrangement with a financial services company. (*Id.* at p. 1291.) According to the arrangement, which was negotiated prior to treatment, the medical providers agreed to provide services to the plaintiffs in exchange for liens in the full amount billed, the

7

plaintiffs agreed to be liable to pay the full lien amounts regardless of recovery in litigation, and the financial services company agreed to purchase the medical accounts and the medical providers' respective lien rights for a price less than the full amount billed. (*Id.* at p. 1292.) The trial court, however, excluded any evidence of the amounts billed and limited the evidence to the discounted amounts the financial services company paid to purchase the lien rights from the medical providers, despite the plaintiffs' liability to repay the full amount of the liens to the financial services company. (*Id.* at pp. 1291, 1293.)

In determining that this exclusion of evidence was erroneous, we noted that though *Hanif* and other cases had placed a limit on the plaintiffs' recovery of medical damages, none had excluded evidence of the billed amount for purposes of determining the reasonable cost of services, and some had suggested the billed amounts were more appropriate than insurance-negotiated rates in assessing general damages. (*Katiuzhinsky*, *supra*, 152 Cal.App.4th at pp. 1295-1296.) We also rejected the contention that because the arrangement—providing for a purchase of the medical providers' lien rights—was made prior to treatment being rendered, the situation was similar to insured persons who receive treatment at reduced, previously negotiated rates set by the providers and insurance carrier. (*Id.* at p. 1296.) Based on the applicable principle of law, as stated in *Hanif,* that "a plaintiff's recovery should be limited to 'the actual amount he paid *or for which he incurred liability* for past medical care and services,' " we reasoned that to prevent the plaintiffs from recovering the amount for which they were liable would amount to an undercompensation and would result in a windfall for the tortfeasor. (*Katiuzhinsky*, at p. 1296.) Additionally, we noted that under the lien arrangement, the medical providers were under no compulsion to sell their lien rights to the financial services company; they merely had the option of doing so, and that the arrangement did

not inflate the amounts billed by the medical providers or reflect any reduced value of the services.  (*Id.* at p. 1298.)

Subsequently, *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 548 (*Howell*) addressed whether a plaintiff could recover from a tortfeasor economic damages for amounts billed by a medical provider in excess of the discounted sum the provider agreed to accept as full payment for its services pursuant to a preexisting contract with the plaintiff's health insurance carrier.  *Howell* ultimately concluded the plaintiff was limited to recovering the amount actually paid on his behalf because the billed amounts did not represent an economic loss the plaintiff incurred.  (*Id.* at pp. 548-549.)

*Howell* began its analysis with the following statement regarding the recoverability of economic damages:  "A person who undergoes necessary medical treatment for tortiously caused injuries suffers an economic loss by taking on liability for the costs of treatment.  Hence, any reasonable charges for treatment the injured person has paid or, having incurred, still owes the medical provider are recoverable as economic damages."  (*Howell*, *supra*, 52 Cal.4th at p. 551.)  However, it continued, "a plaintiff may recover as economic damages *no more* than the reasonable value of the medical services received and is not entitled to recover the reasonable value if his or her actual loss was less."  (*Id.* at p. 555.)  Thus, according to *Howell*, "[t]o be recoverable, a medical expense must be both incurred *and* reasonable" so that the plaintiff does not recover damages for a loss she has not suffered and so that the damages she does receive are reasonable to compensate her for the loss she has suffered.  (*Ibid.*)

In reaching this conclusion, *Howell* relied on the Restatement, which provides that a person is usually entitled to recover the "reasonable value" of services rendered by a third party but that where the injured person paid " '*less than the exchange rate*' "—that is, less than the "market value or the amount for which [a service] could usually be

9

exchanged"—her recovery is limited to the amount she paid. (*Howell*, *supra*, 52 Cal.4th at pp. 555-556, quoting Rest.2d Torts, § 911, com. h, pp. 476-477.) Howell's medical providers had preexisting agreements with her health insurance carrier to provide the medical services at a contractually discounted rate as full payment for the services rendered, therefore, Howell never incurred liability for the full charges. (*Howell*, at p. 557.) For this reason, *Howell* took care to factually distinguish *Katiuzhinsky*, where the plaintiffs were liable for the full amount of the medical providers' charges. (*Howell*, at p. 557.) It is also for this reason that *Howell* did not rely on the "reasonable value of services" to limit the potential recovery for medical damages; rather, it limited recovery to the amount paid on the plaintiff's behalf, holding that "an injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial," leaving open the question of whether the reasonable value of their services may be some greater amount. (*Id.* at p. 566.)

Howell did, however, discuss the theoretical relationship between amounts billed by medical providers and the reasonable value of their services in the context of explaining that a tortfeasor does not obtain a windfall when the plaintiff is limited to recovering the lesser of the reasonable value of services or the actual amount paid or incurred. (*Howell*, *supra*, 52 Cal.4th at pp. 560-563.) *Howell* noted that providers may establish their charges based on factors other than merely the costs of services, that there may be significant disparities in the amounts charged to patients depending on whether they are privately insured, uninsured, or receive public medical benefits, and that the amounts charged are not necessarily representative of the amount that will ultimately be paid. (*Id.* at p. 561.) In this discussion, *Howell* "d[id] not suggest hospital bills always exceed the reasonable value of the services provided" (*id*. at p. 561), and instead would state only that "the relationship between the value or cost of medical services and the

10

amounts providers bill for them . . . is not always a close one . . . " (*id.* at p. 562). It thus concluded that as "it is not possible to say generally that providers' full bills represent the real value of their services, nor that the discounted payments they accept from private insurers are mere arbitrary reductions," tortfeasors do not obtain a windfall when the plaintiff is limited to recovery of the discounted amount actually paid on his or her behalf. (*Id.* at p. 562.)

Nonetheless, as an extension of its holding regarding the cap on a plaintiff's recovery of medical damages, *Howell* also held that when a medical provider has accepted, by prior agreement, less than the full bill as full payment for services rendered, evidence of the amount paid is relevant to prove the plaintiff's past medical damages and evidence of the full billed amount is not relevant to prove the same. (*Howell*, *supra*, 52 Cal.4th at p. 567.) *Howell* further acknowledged that there is "an element of fortuity" involved with respect to the medical expenses a tortfeasor may be liable to pay, i.e., "[a] tortfeasor who injures a member of a managed care organization may pay less in compensation for medical expenses than one who inflicts the same injury on an uninsured person treated at a hospital." (*Id.* at p. 566.)

Following *Howell*, the case of *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308 (*Corenbaum*) addressed whether evidence of the full amount billed was admissible for purposes of calculating *future* medical expenses and noneconomic damages where the plaintiff's medical providers accepted, pursuant to preexisting agreements, less than the full amount billed as payment in full for their services. (*Id.* at pp. 1318-1319.) Based on the reasoning set forth in *Howell*, *Corenbaum* held that "evidence of the full amount billed for a plaintiff's medical care is not relevant to the determination of a plaintiff's damages for past medical expenses, and therefore is inadmissible for that purpose if the plaintiff's medical providers, by prior agreement, had contracted to accept a lesser amount as full payment for the services provided." (*Corenbaum*, at p. 1328.)

11

*Corenbaum* further held that the full amount billed is inadmissible to prove future medical expenses because it is "not an accurate measure of the value of medical services" (*id.* at p. 1330), neither can it be relied on by an expert in forming an opinion regarding the reasonable value of future medical expenses, nor is it admissible for the purposes of arguing noneconomic damages (*id.* at pp. 1331-1333).

Thereafter, *State Farm Mutual Automobile Ins. Co. v. Huff* (2013) 216 Cal.App.4th 1463 (*Huff*), an interpleader action involving the Hospital Lien Act (Civ. Code, §§ 3045.1-3045.6), decided that a medical provider seeking interpleaded funds bears the burden of proving the amount it seeks is a " 'reasonable and necessary charge[]' " for the services rendered (*Huff*, at p. 1470). The only evidence presented by the hospital to establish it was entitled to the interpleaded funds was a copy of the patient's unpaid hospital bill. (*Id.* at p. 1467.) Though the trial court found that to be prima facie evidence that the services were rendered and billed, thereby not requiring an expert declaration of reasonableness and necessity (two elements that together limit the lien amount a hospital may recover), *Huff* disagreed. (*Id.* at pp. 1468-1469.) Relying on language from *Corenbaum* and *Howell*, *Huff* reasoned the bill alone is insufficient evidence because " 'the full amount billed by medical providers is not an accurate measure of the value of medical services' [citation] because 'many patients . . . pay discounted rates,' and standard rates 'for a given service can vary tremendously, sometimes by a factor of five or more, from hospital to hospital . . . .' " (*Huff*, at p. 1471.) Rather, *Huff* concluded, the hospital must present additional evidence that the services rendered were necessary—i.e., reasonably required by the patient's injury—and that " 'the charges for such services were reasonable.' " (*Ibid.*)

*Ochoa v. Dorado* (2014) 228 Cal.App.4th 120 (*Ochoa*), relying on the reasoning of *Howell* and *Corenbaum* and the conclusion in *Huff*, then held that even where there is no prenegotiated discounted rate "the full amount billed, but unpaid, for past medical

12

services is *not relevant* to the reasonable value of services provided." (*Ochoa*, at p. 135, italics added.) *Ochoa* acknowledged that *Howell* "did not expressly hold that unpaid medical bills are not evidence of the reasonable value of the services provided," but it interpreted the reasoning of *Howell* as "strongly suggest[ing] such a conclusion," and noted that *Corenbaum* had indeed reached that conclusion in reliance on *Howell*. (*Ochoa*, at p. 135.) *Ochoa* also read *Huff* as standing for the proposition that an unpaid hospital bill is "not evidence of the reasonable value of the services provided." (*Ochoa*, at p. 136.) *Ochoa* expressly declined to follow *Katiuzhinsky*, as well as other existing precedent, finding it unpersuasive with respect to whether medical charges billed reflect on the reasonable value of services provided. (*Ochoa*, at p. 138.) Rather, it concluded that "evidence of unpaid medical bills cannot support an award of damages for past medical expenses." (*Id.* at p. 139.)

*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311 (*Bermudez*) too addressed the related questions of what evidence is admissible and sufficient to prove an award of medical damages. It noted that *Howell* had clarified the law with respect to the recovery of medical damages where the injured person was insured, but that "[t]he ramifications of *Howell* . . . in a case brought by an *uninsured* plaintiff (who has not paid his bill) are less clear," especially because *Howell* did not rely on the measure of the reasonable value of medical services but the amount paid or incurred. (*Bermudez*, at p. 1329.) According to *Bermudez,* "*Howell* certainly did not suggest uninsured plaintiffs are limited in their measure of recovery to the typical amount incurred by an insured plaintiff, or, for that matter, the typical amount incurred by any other category of plaintiff." (*Ibid.*) Nor did *Howell* offer any "bright-line rule on how to determine 'reasonable value' when uninsured plaintiffs have incurred (but not paid) medical bills"; it merely endorsed the use of a "market or exchange value," which *Bermudez* deemed consistent with *Katiuzhinsky*. (*Bermudez*, at p. 1330.) Thus, *Bermudez* concluded, "the measure of

13

damages for uninsured plaintiffs who have not paid their medical bills will usually turn on a wide-ranging inquiry into the reasonable value of medical services provided, because uninsured plaintiffs will typically incur standard, nondiscounted charges that will be challenged as unreasonable by defendants." (*Id.* at pp. 1330-1331.)

With respect to the admissibility of evidence of medical damages, *Bermudez* noted pre-*Howell* cases did not require exclusion of billed amounts so long as there was independent evidence the medical procedures were necessary as a result of the tort at issue, with the implication that the billed amount was always relevant to the amount incurred by the plaintiff or the " 'reasonable' " value of the services provided. (*Bermudez, supra*, 237 Cal.App.4th at p. 1332.) Following *Howell*, *Corenbaum* ruled that "evidence of the full amount billed for past medical services was not relevant (and was therefore inadmissible) to prove past medical expenses, future medical expenses, and/or noneconomic damages." (*Bermudez*, at p. 1334.) However, neither *Howell* nor *Corenbaum* involved uninsured plaintiffs, nor did they rule that evidence of billed amounts is inadmissible in such cases. (*Bermudez*, at p. 1335.) Where the plaintiff is uninsured, the billed amount is not only relevant to determining the amount incurred by the plaintiff but also to the reasonable value of medical services rendered. (*Ibid*.)

*Bermudez* also noted that *Huff* did not suggest the billed amount is irrelevant, but merely that it was not sufficient in and of itself to prove the amounts charged are reasonable or that the treatment rendered was necessary. (*Bermudez, supra*, 237 Cal.App.4th at p. 1336.) It further discussed *Ochoa,* stating "[i]t is difficult to precisely identify the holding in *Ochoa*, because its analysis and terminology conflated two related questions . . . [—]the *admissibility* of evidence and the *sufficiency* of evidence to support a judgment[]. Uncontroversially, *Ochoa* holds that evidence of unpaid medical bills, without more, is not substantial evidence of the reasonable value of services provided. Less clear is whether *Ochoa* intended to say something about the admissibility

14

of evidence pertaining to the amount of unpaid medical bills . . . ." (*Bermudez*, at p. 1337, fn. omitted.) To the extent that it did, *Bermudez* criticizes that conclusion as well as the blanket ruling of *Corenbaum* that billed amounts are not relevant to determining whether the amount paid was reasonable, for, as *Bermudez* points out, in the absence of a stipulation about reasonableness, "evidence of the initial billed amount would be relevant to proving the reasonableness of the discounted amount that was actually paid." (*Bermudez*, at p. 1335, fn. 6; see *id*. at p. 1337.)

Finally, this court again addressed the issue of medical damages in *Uspenskaya v. Meline* (2015) 241 Cal.App.4th 996 (*Uspenskaya*). There, as here, the plaintiff received medical treatment in exchange for a lien benefiting the providers, who later sold those liens to a third party for an amount less than that billed to the plaintiff for the services. (*Id.* at p. 999.) The trial court prevented defendant from introducing the amount the third party paid as evidence of the reasonable value of the medical services provided. (*Ibid.*) *Uspenskaya* noted that the payments by the third party may be relevant—"they have a *tendency* in reason to prove reasonable value" (*id*. at p. 1002)—but they were properly excluded as unduly prejudicial and potentially confusing because the amount paid "represents a reasonable approximation of the *collectability of the debt* rather than a reasonable approximation of the *value of the plaintiff's medical services*" (*id*. at p. 1003) and the defendant did not proffer any other evidence that the amount paid reflected a reasonable valuation of the medical services (*id*. at pp. 1003-1004).

As *Bermudez* had done before it, *Uspenskaya* distinguished *Howell* and *Corenbaum* on the basis that they did not involve uninsured plaintiffs who had incurred the full amount billed. (*Uspenskaya*, *supra*, 241 Cal.App.4th at p. 1006.) *Uspenskaya* also adopted *Bermudez*'s observation about the " '*wide-ranging inquiry*' " that will likely be presented to assess the reasonable value of medical services where the plaintiff is uninsured. (*Uspenskaya*, at p. 1007.) It further held that inquiry "is not necessarily

15

limited to the billed amounts," but if the defendant seeks to introduce evidence of a lesser payment the defendant will also have to present "some additional evidence showing a nexus between the amount paid . . . and the reasonable value of the medical services." (*Ibid.*)

In sum, a plaintiff, whether insured or uninsured, bears the burden of proving her medical damages, which are limited to the lesser of (1) the amount incurred or paid for medical services, and (2) the reasonable value of the services rendered. (*Howell*, *supra*, 52 Cal.4th at pp. 555-556; *Huff*, *supra*, 216 Cal.App.4th at p. 1470.) The reasonable value of a service is its market or exchange value, that is the "customary rate," or the rate that the provider or similar providers "ha[ve] received . . . and other factors, including the reputation of the person giving the services, the skill with which the work is done and the difficulty and danger of the work, are taken into consideration." (Rest.2d Torts, § 911, com. h, p. 476; see *Howell*, *supra*, at pp. 555-556.) Where the plaintiff is insured (whether through private insurance or government benefits), evidence of the amount accepted as payment in full by the medical providers is relevant to prove the reasonable value of services, but evidence of the amount billed is not relevant to prove the reasonable value of services already provided. (*Howell*, *supra*, at p. 567; *Corenbaum*, *supra*, 215 Cal.App.4th at p. 1328.) Neither may it be relied on by experts in their projections of future medical costs or as a basis for assessing noneconomic damages where the plaintiff is insured. (*Corenbaum*, at pp. 1330-1333.)

Where a plaintiff is not insured, medical bills are relevant (admissible) to prove both the amount incurred and the reasonable value of medical services provided, but they are not sufficient on their own to prove the reasonable value. (See *Bermudez*, *supra*, 237 Cal.App.4th at p. 1335, 1337; *Katiuzhinsky*, *supra*, 152 Cal.App.4th at pp. 1295-1296; see also *Huff*, *supra*, 216 Cal.App.4th at p. 1471.) Rather, the uninsured plaintiff must present additional evidence, likely in the form of expert opinion testimony, to

establish that the amount billed is a reasonable value for the service rendered. (See *Bermudez*, *supra*, at pp. 1336, 1338.) Additionally, amounts paid by third parties to purchase liens from providers may be relevant to determining the reasonable value of services provided to the uninsured, but it is not error to exclude that evidence without additional evidence establishing a nexus between the amount paid for the lien rights and the reasonable value of the service. (*Uspenskaya*, *supra*, 241 Cal.App.4th at p. 1007.)

We agree with the reasoning of *Bermudez* and *Uspenskaya* with respect to the admissibility and relevance of medical bills to determine medical damages for uninsured plaintiffs for multiple reasons. First, because a plaintiff must show the amount incurred to establish her claim for damages, she must be permitted to present evidence of that amount. Second, because the plaintiff was apparently willing to pay that amount, it has some relevancy to establishing the reasonable value of the service, i.e., its market value. If a plaintiff can find an expert to competently testify that the amount incurred is the reasonable value of the service rendered, she should be permitted to do so. The defendant could certainly cross-examine the basis of that expert's opinion and present her own expert opinion testimony that the reasonable value of the service is much lower, i.e., the amount regularly paid for such a service. A jury could, based on this "wide-ranging inquiry" and in possession of ample conflicting evidence, best decide what the reasonable value of the medical treatment was, which is likely to be the cap on medical damages where the plaintiff is not insured. (*Bermudez*, *supra*, 237 Cal.App.4th at pp. 1330-1331, 1338.)

### 2.3 *Admission of Evidence of Amounts Billed*

Cowan contends it was error for the trial court to admit into evidence amounts charged as evidence of the reasonable value of medical services provided. In this case, we agree.

17

Though an uninsured plaintiff must be permitted to present evidence that the amount billed reflects the reasonable value of services provided, plaintiff's expert did not provide any such opinion in this case. Rather, Lievense merely opined that the charges billed by providers for medical services rendered to Frisk "fell within the range of usual, customary, and reasonable" charges, meaning that they fell within the range of what similar medical providers would charge. He did not provide the additional requisite opinion testimony tying that amount charged to the reasonable value of the service rendered, i.e., its market value. (See *Howell*, *supra*, 52 Cal.4th at pp. 555-556.) In fact, he opined that what medical providers could expect to be paid was irrelevant to the inquiry.

Lievense stated that in setting prices to charge for services "[t]he basis for the valuation, the medical services, is the cost of providing those services, what it cost to provide nurses and medication and heat, lighting, and the parking lot rebuild. Those are the actual costs and those are recovered by charges. [¶] Whether the account—what's paid, if anything, does not indicate what it cost to provide those services. [¶] Keep in mind healthcare is different. In a surprising number of cases absolutely nothing is paid. So the fact that there's a zero payment doesn't mean that the value of the services is zero. The nurses were still paid. [¶] The fact that there was a payment of any sort by a lien company or any other system doesn't mean that that's what was accepted or that's where the value of the services sits. The value is still measured by the charges at the usual, customary, and reasonable level."

Regardless of whether Lievense has a valid point with respect to how the medical marketplace operates, we are bound by existing precedent which indicates that the basis for determining the reasonable value of medical services is its market value—that is, the amount sought *and paid* for the service. (*Howell*, *supra*, 52 Cal.4th at pp. 555-556.) Moreover, it is clear that without additional evidence providing the nexus between the

18

amount charged and the reasonable value of the service provided, evidence of the amount billed is insufficient to support an award of medical damages. (*Bermudez*, *supra*, 237 Cal.App.4th at pp. 1335-1338.) And, because he did not tie his opinion regarding the reasonableness of the amount charged to the reasonable value of the services, the admission of Lievense's testimony in that regard was error.[1]

### 2.4 *Exclusion of Evidence of Amounts Paid*

Cowan claims it was error for the trial court to exclude evidence of amounts typically paid to medical providers for the same services provided to Frisk. We agree.

As we stated above, where a plaintiff seeking medical damages is uninsured, evidence of amounts paid in the medical marketplace would be relevant to determining the reasonable value of services provided to the uninsured, i.e., the exchange value of such services. Indeed, as recognized in *Howell*, it is entirely possible the reasonable value of medical services is more closely reflected in the negotiated rates paid by private insurers or even through government benefits programs than in amounts charged for services. (*Howell*, *supra*, 52 Cal.4th at p. 562.) Thus, a defendant tortfeasor must be permitted to present evidence that the amount billed is not the reasonable value of services, and that some lesser amount actually paid would reflect the exchange or market value of those services. Accordingly, it was error for the trial court to exclude evidence of the amounts paid on behalf of insured persons.

---

[1] We contrast Lievense's testimony, for example, with that presented in *Bermudez*, in which the plaintiff presented the testimony of two medical experts who opined as to the reasonable value of the services provided, and did not merely "rubber stamp" the amounts charged but challenged some of the amounts billed. (*Bermudez*, *supra*, 237 Cal.App.4th at p. 1339.) *Bermudez* found that evidence to be sufficient to support an award of medical damages because it was not speculative but was based on injuries suffered; medical treatment rendered; and the real world experience of the experts, who considered the medical costs incurred and their own experiences in treating patients. (*Id*. at pp. 1339-1340.)

## 3.0    Remedy

Finally, Cowan contends she is entitled to a retrial as to all issues, and if retrial is limited to damages it should be as to all compensatory damages. Her contention is premised on her assumption that without Sells's testimony regarding payments, "the jury had to be wondering why Cowan was contesting at all. The jury most likely took a disliking to Cowan for making them sit through the trial in which her own expert [(Sells)], called by Frisk so early in the proceedings, had nothing to say. In a case where Cowan needed the jury to consider whether her lifelong medical condition should excuse liability, she never had a chance to focus them on that issue because the entire trial was presented as an *agreement* by all physicians and experts, rather than a dispute." Thus, she claims that because she was not permitted to present evidence disputing the amount of medical damages, the jury was swayed by Frisk's counsel's representation of Cowan's defense as "frivolous." We disagree.

Though Frisk's counsel did argue in his closing that Cowan's dispute about the medical damages was baseless, he also described the dispute about *liability* as the reason for the trial. He accurately argued that much of the evidence as to that issue was undisputed: Cowan knew her blood sugar was low when she decided to drive her car and she crossed into Frisk's lane of traffic, causing the collision. Nor, he argued, was there a dispute that the collision was a "substantial factor" in causing Frisk's injuries; that the treatments she had received and would receive were necessitated by those injuries; that the injuries had affected Frisk's lifestyle; and that the amounts charged were reasonable.

As stated above, we agree it was error for the trial court to exclude evidence of the dispute as to the reasonable value of the medical services rendered and anticipated to be rendered. Thus, as to the issue of medical damages, we agree a new trial is needed. Nevertheless, we do not find the error was prejudicial with respect to the jury's findings on liability or causation.

20

Cowan had an opportunity to dispute her liability. And, in closing argument, Cowan's counsel did dispute liability by arguing that a reasonable person in her situation would have tried to get food, which was what Cowan was attempting to do when the collision occurred. Counsel primarily focused though on punitive damages, arguing Cowan's decision to drive a short distance to get food was not "despicable or vile or contemptible" and that her having had one prior automobile accident "related to a hypoglycemic event" did not make it so, especially since her testimony revealed that though she felt "off" before getting in the car, she "did not feel like she was having a hypoglycemic event." In light of the undisputed evidence regarding Cowan's blood sugar, the collision, her prior diabetes-induced accident, and her lax control or treatment of her diabetes, we cannot conclude that the jury's rejection of her claim that she should be excused based on her diabetes was a result of prejudice caused by the trial court's erroneous evidentiary rulings.

Moreover, we conclude the error was not prejudicial as to damages other than past and future medical specials. The jury was instructed that in deciding compensatory damages, there were two categories of damages claimed: economic and noneconomic. It was further instructed to state the two categories of damages separately on the verdict form,[2] and that in determining the amount of noneconomic damages to award, the jury was to consider Frisk's "past and future physical pain, mental suffering, loss of enjoyment of life, and inconvenience, as well as physical impairment," and "emotional distress." The jury was also instructed there was "no fixed standard" for calculating noneconomic damages, but that the jurors "must use [their] judgment to decide a reasonable amount based on the evidence and [their] common sense." Finally, the trial

---

[2] The special verdict form used by the jury made clear that noneconomic damages were to compensate Frisk for past and future "physical pain, mental suffering, physical impairment, and emotional distress."

21

court instructed that with respect to future damages, the jury would have to calculate Frisk's probable life expectancy, and informed the jury that an average 30-year-old woman would be expected to live another 52 years with some living longer and some dying sooner.

In closing argument, Frisk sought $500,000 in past noneconomic damages and $1.5 million in future noneconomic damages. Frisk's counsel argued for that award of damages based on a per diem calculation method, with past damages being based on a yearly rate of $100,000 (making it a daily rate of $273.97 or an hourly rate of $11.42) and with future damages being based on a yearly rate of $30,000 with her living another 50 years (making it an hourly rate of $3.42).[3] Counsel closed his noneconomic damages argument with, "these numbers, $2 million, if you think—if you think it's low, collectively, you can award more. But $11 an hour for what's happened from today going back to the accident, and $3.40 an hour going forward, that's where justice starts. That is fair. That is reasonable. That is justice."

Counsel for Cowan did not address noneconomic damages in his closing argument. After less than three hours of deliberation, the jury awarded Frisk $500,000 for past noneconomic damages and $2 million for future noneconomic damages. Additionally, based on its finding of malice, the jury awarded Frisk the stipulated

---

[3] Counsel exposited the per diem calculation method by querying whether, as to past noneconomic damages, "That hour this summer when Ms. Frisk woke up in tears because she thought she was going to do her mom a favor and get the girls' stuff together and clean the house by herself, was that hour worth $11? [¶] That hour, from the instant the collision occurred until 60 minutes later, was that worth 11 bucks? Some of those hours are worth a lot more than that." And, as to future noneconomic damages, he pondered, "Is that hour down the road while she's laying [*sic*] on the operating table worth $3.42? When she's 65, 75, is waking up in the night in pain and needing to take those high dosages of medication worth [$]3.42 for that hour? It is. It's worth at least that. It's worth at least that."

punitive damages amount of $1.  Nothing in the record suggests the jury awarded noneconomic damages as a multiplier of economic damages awarded, or that the award of economic damages in any way influenced the jury's decisionmaking as to noneconomic damages.  Therefore, there is not any indication the jury's award of compensatory damages other than for medical expenses was prejudicially impacted by the trial court's erroneous evidentiary rulings.  Accordingly, we limit the retrial on remand to the issue of damages for past and future medical expenses only.

## DISPOSITION

We vacate the award of damages to plaintiff for past and future medical expenses and remand the matter to the trial court for a retrial limited to determining the amount of damages to be awarded plaintiff for past and future medical expenses.  In all other respects the judgment is affirmed.  Cowan is entitled to her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (3).)


                                                     BUTZ           , J.


We concur:


    HULL             , Acting P. J.


    DUARTE         , J.

23